**Roger HAVNER, et al., Petitioners,**

v.

**E–Z MART STORES, INC., Respondent.**

**No. D–0190.**

Supreme Court of Texas.

Feb. 26, 1992.

---

Coy Johnson, Sulphur Springs, Robert R. Schwartz, Tyler, Preston H. Dial, Jr., San Antonio, for petitioners.

Alan D. Harrel, Texarkana, Mike Hatchell, Tyler, for respondent.

## OPINION

DOGGETT, Justice.

We consider whether, under the facts of this case, some evidence exists to support a wrongful death judgment against a convenience store owner whose employee was abducted from her job and murdered by an unknown assailant. The court of appeals reversed and rendered, holding that there was no evidence that the store's negligently deficient security system was a cause of the employee's death. 797 S.W.2d 116. We disagree, and we reverse the judgment of the court of appeals and remand to that

court for further action consistent with this opinion.

Diana Havner was an overnight clerk at a store owned by E–Z Mart Stores, Inc. in Sulphur Springs. While on routine patrol in the early morning hours of August 2, 1987, police officer Jay Owens discovered the store unlocked and Havner missing. The cash register was empty; next to it Owens found a half-drunk cup of coffee and a burned-out cigarette in an ashtray. Havner's purse was behind the counter and her car was parked out front. Materials in and around the oven indicated she had been preparing hamburgers prior to her disappearance. The store was not equipped with any security devices.

Four days later, in an undeveloped residential area, Havner's badly mutilated body was found with her skull crushed, in an E–Z Mart smock, and naked from the waist down. Despite a full police investigation, no arrests or convictions resulted.

Havner's two daughters, her parents and her estate (the "Havners") brought suit against E–Z Mart for damages suffered as a result of her death. In response to questions, the jury determined that the employer's failure to provide a safe place to work was a cause of Havner's abduction, rape and murder; the trial court rendered judgment on the verdict. Finding no evidence, or alternatively insufficient evidence, of causation, the court of appeals reversed and rendered judgment that the Havners take nothing.

## I. Jurisdiction

Initially, we must consider E–Z Mart's challenge to our jurisdiction over the Havners' application for writ of error. Although the application was timely filed if measured from the date of the overruling of the Havners' second motion for rehearing in the court of appeals, E–Z Mart contends this second motion was improper. Because the application was not filed within forty days [1] after the overruling of the

---

1. Although the time period for filing an application is generally thirty days after the overruling of a motion for rehearing, Tex.R.App.P. 130(b), this court granted to the Havner petitioners an extension to a time "within 40 days of overruling the last timely filed motion for rehearing." See id. at (d).

Havners' *first* motion, E–Z Mart asserts it is late, depriving this court of jurisdiction. *See Reynolds v. Dallas County,* 146 Tex. 372, 207 S.W.2d 362 (1948).

■ In *Honeycutt v. Doss,* 410 S.W.2d 772, 773 (Tex.1966) (per curiam), this court, writing on the permissibility of further motions for rehearing in an effort "to put the matter at rest," held that:

> when a court of civil appeals hands down an opinion in connection with an order overruling a motion for rehearing, rule 458 authorizes a losing party to file a further motion for rehearing *as a matter of right* if he deems one necessary, *whether or not there is any sound or reasonable basis for his conclusion.*

(Emphasis supplied). This refusal to second-guess the need for a further motion for rehearing was reaffirmed in *Stoner v. Massey,* 586 S.W.2d 843, 845 (Tex.1979) (orig. proceeding). The applicable procedural rule, Tex.R.Civ.P. 458, as it existed at the time of these opinions provided that a further motion for rehearing could be filed whenever the court of appeals issued an opinion in connection with overruling the first motion if "the losing party deems same necessary." The controversy did not end there, however, for in 1981 we amended the language permitting a further motion for rehearing "if the losing party deems same necessary" as follows:

> If on rehearing the court of appeals or any panel thereof modifies its judgment, or vacates its judgment and renders a new judgment, or hands down an opinion in connection with the overruling of a motion for rehearing, *a further motion for rehearing may, if a party desires to complain of the action taken,* be filed within fifteen days after such action occurs. However, in civil cases, a further motion for rehearing shall not be required or necessary as a predicate for a point in the application for writ of error if the asserted point of error was overruled by the court of appeals in a prior motion for rehearing.

Tex.R.App.P. 100(d) (emphasis supplied). This amendment has led cautious practitioners to file motions for extension of time

with this court seeking guidance on the permissibility of a further motion for rehearing, or even to file multiple appeals in the same action.

Here, although the Havners' first motion was overruled, the court of appeals changed its opinion on rehearing. E–Z Mart asserts a further motion was not permitted because the Havner petitioners had no need to complain of the modification. In support of its position, E–Z Mart references the cover letter from the clerk of the court of appeals stating that the opinion on rehearing contained only "minor nonsubstantive changes" and the fact that the Havners' further motion raised points identical to those in its previously overruled motion for rehearing. *See Great Atlantic Life Ins. Co. v. Harris,* 723 S.W.2d 329 (Tex.App.—Austin 1987, writ dism'd) (dismissal by this court for want of jurisdiction after similar argument made).

Any risk of delay from parties filing further motions for rehearing is outweighed by the uncertainty injected into the appellate process by this court's review on a case-by-case basis of the permissibility of a further filing. To put the matter at rest once again, we hold that a party may file a further motion for rehearing as a matter of right if the court of appeals alters in any way its opinion or judgment in conjunction with the overruling of a prior motion for rehearing. E–Z Mart's motion to dismiss for want of jurisdiction is overruled.

## II. Causation

■ We then turn to the merits of this appeal. In deciding a "no evidence" point, this court must consider only the evidence and inferences tending to support the jury's finding, viewed most favorably in support of the finding, and disregard all contrary evidence and inferences. *State v. $11,014.00,* 820 S.W.2d 783 (Tex.1991) (per curiam); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

■ The court of appeals held that, as a matter of law, E–Z Mart's failure to take adequate security precautions was not a cause in fact of Havner's death. Cause in

fact means that an act or omission was a substantial factor in bringing about the injury and without which no harm would have occurred. *Missouri Pac. Ry. Co. v. American Statesman*, 552 S.W.2d 99, 103 (Tex.1977). The act or omission need not be the sole cause. *Id.* at 103–04. Nor "need [causation] be supported by direct evidence, as circumstantial evidence and inferences therefrom are a sufficient basis for a finding of causation." *City of Gladewater v. Pike*, 727 S.W.2d 514, 518 (Tex. 1987); *accord State v. $11,014.00*, 820 S.W.2d at 784. Since E–Z Mart concedes here both negligence and foreseeability, the only issue for our consideration is causation—whether there is any evidence from which reasonable minds could draw an inference that the failure to provide a safe place to work was a cause in fact of Havner's death. *See City of Gladewater*, 727 S.W.2d at 518. Whether other possible inferences may be drawn from the evidence is not the relevant inquiry. *See McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 904 (Tex.1980).

At trial, the Havners offered extensive testimony concerning the need for, availability of, and the failure of E–Z Mart to retain or install various security devices. The prior owner of the Sulphur Springs store, Shop–a–Minute, had installed two security mechanisms: (1) a "panic button" alarm, set under the counter just below the cash register, and (2) a necklace alarm, which could be worn around the neck and under the employee's company smock. Designed to be activated unobtrusively, these devices could silently transmit a signal to an alarm unit in the back of the store which would, in turn, relay the call for help to the police station. Upon its acquisition, E–Z Mart disconnected this system, which could have been maintained for about $8.00 a month.

At least two more reasonably priced silent alarm mechanisms were commercially available, including an alarm "clip," triggered by removal of money placed within it from the cash register and a foot-activated "toebar" alarm, located beneath the cash register. Alarm, security and law enforcement experts testifying at trial stressed the importance of these types of systems both in deterring robbery and in avoiding employee injury.

Such silent alarms had been activated unobtrusively when necessary on other occasions. In five of seven other convenience store robberies identified by Detective Sergeant Robert Stidham of the Sulphur Springs police department, alarms had been activated without injury to the clerk. According to assistant manager Katena McCord the alarms at this particular location had been triggered accidentally prior to their removal by E–Z Mart. In each instance, the police responded promptly to the call. With around-the-clock police monitoring of alarm systems, Detective Sergeant Stidham indicated that police response time in the early morning hours would be about one minute. Sulphur Springs Police Chief Donnie Lewis confirmed the efficiency of the local force, estimating response time at between one and one and a half minutes.

Besides the lack of an alarm system, other omissions and actions of E–Z Mart were criticized by expert witnesses as lessening security, and heightening the risk of employee injury. Dr. Norman Bottom, a security expert, testified as to the frequency of convenience store crime and the critical importance of security precautions in worker protection. He described the following inadequacies in the particular store involved: poor external lighting, windows blocked with promotional signs, employees untrained as to the proper procedures during an abduction, installation of a telephone that permitted only incoming management calls but precluded outgoing emergency calls, and failure to have two clerks on late night duty. Other E–Z Mart practices were also described as creating a more attractive target for crime. One of these was a check cashing policy requiring more cash on the premises than under prior ownership. Because E–Z Mart's remodeling to expand counter space rendered the drop safe inoperable, employees were instructed to hide cash in excess of $50.00 in different parts of the store. Based on his experi-

ence[2] and expertise,[3] Dr. Bottom concluded that E–Z Mart's security was deficient.

Chief Lewis concluded that E–Z Mart had taken no precautions whatsoever for the safety of its employees. Detective Sergeant Stidham, who was placed in charge of the investigation, agreed. Both Lewis and Stidham offered their expert opinions, without objection, that Diana Havner had been taken from the store by force and that, had adequate security been provided, she would be alive.

■ The fourth expert witness was Norman Gray, manager of an alarm company and a former police officer. He testified as to the inadequacy of E–Z Mart's security precautions and gave his opinions that the police would have had adequate time to respond and that Diana Havner would have been alive had an alarm system been present. E–Z Mart objected only to Gray's opinion as to response time. Regarding the testimony of these four experts, the court of appeals failed to discuss two and rejected the other two.[4]

■ With no witnesses located to this abduction, rape, and murder, the precise surrounding circumstances will probably never be known. The Havners were not, however, required to prove their case to an absolute degree of certainty. As one commentator concludes:

**2.** Dr. Bottom was the founding chairman of the non-profit International Foundation for Protection Officers and, at the time of trial, was editor-in-chief of a publication on security administration. He had taught security for seven years and authored four books and over 100 articles on the subject.

**3.** In his testimony, Dr. Bottom referenced numerous studies demonstrating the effectiveness in crime deterrence of security measures of the type that E–Z Mart chose not to employ. One, performed by the Western Behavioral Science Institute for the Southland Group, found that robberies fell 40% and injuries to employees dropped 30% when these measures were implemented. Another determined that an ordinance in Gainesville, Florida requiring two clerks on late-night duty in convenience stores significantly reduced the number of armed robberies.

**4.** Despite E–Z Mart's failure to object to the causation testimony of these witnesses, the dissenters would condone the court of appeals' rejection of this key evidence as the mere "spec-

The plaintiff is not, however, required to prove the case beyond a reasonable doubt. The plaintiff need not negative entirely the possibility that the defendant's conduct was not a cause, and it is enough to introduce evidence from which reasonable persons may conclude that the event was caused by the defendant than it was not.

W. Keeton, Prosser and Keeton on Torts § 41, at 269 (5th ed. 1984) (footnotes omitted). Texas law has never imposed a reasonable doubt standard in proving negligence. *See, e.g., Bock v. Fellman Dry Goods Co.,* 212 S.W. 635, 636 (Tex.Comm'n App.1919, holding approved) (requiring plaintiff to exclude other probabilities would impermissibly impose "burden of establishing her case beyond a reasonable doubt").

The court of appeals nonetheless placed on the Havners the burden of negating all other possible causes, as is apparent by its ultimate conclusion that:

As significant as the evidence in this record is, equally significant is the absence of certain evidence. This case presents many unknowns. We do not know who the assailant was, whether he, she or they were armed, whether Diana Havner was ordered from the premises, taken by ruse, or otherwise; and we do not know if she was actually abducted.

ulation" of "lay witnesses." At 464–65 (Cornyn, J., dissenting). Each was qualified as an expert without objection. Both Detective Sergeant Stidham and Chief Lewis were law enforcement veterans who had personally inspected the crime scene and participated actively in the murder investigation. Both possessed extensive personal knowledge and perception of the facts underlying their opinions. An investigating officer may properly testify as to causation. *Louder v. DeLeon,* 754 S.W.2d 148 (Tex.1988) (per curiam). Given their knowledge of the underlying facts and their expertise, the witnesses' testimony met the requirement of assisting the fact-finder and should not be disregarded as insisted by the dissent. *See* Tex.R.Civ.Evid. 702.

*Reflecting an erroneous view that there was no evidence of causation, both the dissent and the court of appeals reject testimony of Stidham and Gray as speculative. We conclude otherwise that the testimony of each of the four experts constituted some evidence that inadequate store security was a cause of Havner's death.*

There is far too little known about the causes or motivations behind the criminal acts committed against Diana Havner for this Court to conclude that there is any evidence that any conduct by E–Z Mart caused the harm to Diana Havner.

797 S.W.2d at 119. Aside from its improper imposition of a more onerous burden of proof, this passage ignores evidence in the record negating the possibility that Diana Havner voluntarily departed the store. There was testimony at trial that Havner, a chain smoker, never went anywhere without her cigarette case, which was found on the counter near the cash register, and that she also would not leave without her purse, also left there. Additionally, Havner was uniformly described as a conscientious, dependable employee who would not have left the store voluntarily. Not only did petitioners' expert witnesses opine that Havner had been abducted against her will, E–Z Mart's director of security stated: "I agree with Chief Lewis that [the criminals] came in, took Diana out by force, probably using a weapon...." Moreover, Chief Lewis testified, without objection, that the investigation produced "[n]ot even a trace of evidence" that Havner had been murdered by an acquaintance or enticed from the store.[5]

As we recently held, "[w]hen considering a no evidence point, it [is] not the province of the court of appeals to second guess the fact finder unless only one inference could be drawn from the evidence." *State v. $11,014.00*, 820 S.W.2d at 785, *citing Ross v. Green*, 135 Tex. 103, 139 S.W.2d 565, 572

(1940).[6] Under the evidence presented in this case, we hold that some evidence exists to support the jury's finding that inadequate employer security was one cause of Havner's death.

To accept the contrary view urged by the dissent would, in almost every conceivable circumstance, make redress impossible for the family of a victim killed in an unwitnessed occurrence regardless of the strength of the circumstantial evidence. It would remove any legal incentive for businesses to take adequate security measures to protect employees. It would deny determined law enforcement officials the partnership with the private sector needed to oppose lawlessness. In no way do we "direct[ ] the public's rightful outrage about the rising level of crime toward [any business]," at 466; we simply refuse to create a wholly unwarranted exception to well-established tort law in Texas.

Nor does our decision in *East Texas Theatres, Inc. v. Rutledge*, 453 S.W.2d 466 (Tex.1970), upon which the court of appeals relied, compel a different result. In that case, we determined that the failure of a theater owner to control a "rowdy" crowd that was "hollering" and throwing paper cups from the balcony was not a cause of injuries sustained by a patron hit with a bottle when exiting the theater. The court found that, unless the identity of the bottle thrower were known, it was impossible to determine the effectiveness of the suggested control measures. The identity of the

---

**5.** The dissenters rely in part on testimony of E–Z Mart's expert witness that Havner must have been abducted and murdered by an acquaintance because statistics show that most female homicide victims in the United States are killed by someone they know. In other words, an unwitnessed crime against a woman is more difficult to prove than one against a man.

The dissent cites at length the testimony of Havner's co-employee concerning her relations with a boyfriend, suggesting that she was enticed from the store and surprised when the encounter turned violent. This theory is inconsistent with money having been taken from the cash register and the unanimous conclusion of witnesses, both for the plaintiffs and the defense, that Havner was abducted from the store by force. Moreover, Chief Lewis stated that the police had investigated "[e]verybody we could locate that knew Diana or that she had dated" and concluded there was no evidence that an

acquaintance perpetrated the crime. Indeed, our careful review of the record reveals no evidence that anything but force caused Havner's departure.

**6.** *See also* Prosser and Keeton on Torts § 41, at 270 (5th ed. 1984) (footnotes omitted):

When a child is drowned in a swimming pool, no one can say with certainty that a lifeguard would have saved the child; but the experience of the community permits the conclusion that the absence of the guard played a significant part in the drowning. Such questions are peculiarly for the jury; and whether proper construction of a building would have withstood an earthquake, or whether reasonable police precautions would have prevented a boy from shooting the plaintiff in the eye with an airgun, are questions on which the court can seldom rule as a matter of law.

criminals is not critical in determining whether adequate security precautions would have prevented harm to Diana Havner.

The alternative holding of the court of appeals regarding insufficiency of the evidence to establish producing cause is most troubling. While frequently desirable as an exercise of judicial economy, an alternative holding is not appropriate here. Once a court of appeals has concluded that no evidence supports a finding, it is logically compelled to hold that whatever evidence it did not discover must be, at best, insufficient. Even if the court details all the evidence presented at trial, it cannot fairly explain its insufficiency, as required by *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex.1986), after making an erroneous holding that *no* evidence exists. In this situation, the appellee is not accorded a meaningful review of the sufficiency of the evidence supporting the verdict in its favor. We accordingly decline to remand to the trial court pursuant to the alternative holding. Instead, we remand to the court of appeals, now with the benefit of our conclusion that the evidence is legally sufficient, for a new review of the factual sufficiency of the evidence to support the jury's finding as to causation.

For the foregoing reasons, we reverse the judgment of the court of appeals and remand the cause to that court for further action consistent with this opinion.

PHILLIPS, C.J., joined by COOK, J.

PHILLIPS, Justice, concurring.

Although I share to some extent the concerns expressed by the dissent regarding the excessive use of marginal "experts" in modern trial practice, I believe that the testimony of the fact witnesses, taken together, constitutes more than a scintilla of evidence to support the verdict in this case for the Havners. Accordingly, I join in the court's judgment.

The factual evidence in the record is detailed in the court's opinion. Taken in the light most favorable to plaintiffs, it provides some evidence that Havner was taken suddenly and against her will by her assailant from inside the store, that E–Z Mart chose not to equip the store with various available safety devices, that one or more of those devices could have been successfully activated by Havner, and that the local police could have arrived on the scene within one minute after receiving the alarm. Finally, the failure of the police investigation, focusing on Havner's past friends and acquaintances, is some evidence that the crime was perpetrated by a stranger.

Whether some, most, or even all of the expert testimony proffered in this case was conjecture or surmise is thus an interesting, but at this juncture irrelevant, inquiry. I agree that this cause should be remanded to the court of appeals to review the factual sufficiency of the evidence to support the jury's finding as to causation.

COOK, J., joins in this concurring opinion.

CORNYN, Justice, dissenting.

Although the Court obviously perceives an injustice when wrongful death and survival action beneficiaries do not, perhaps because they cannot for reasons beyond their control, prove an element of their cause of action, what is compromised by their holding today is nothing less than the allocation of the burden of proof. For every judicial thumb on one side of the scales of justice, the litigant on the opposing scale receives less than his or her due.[1] But out of concern for the plaintiffs' supposed inability to prove their case because of the record before us, the Court has effectively placed the burden of proof on the defendant to negate the cause in fact element of proximate cause, an essential element of plaintiffs' cause of action, thus reversing the burden of proof. For this reason, I dissent.

It is axiomatic that the plaintiff in a negligence case bears the burden of establishing each element of his or her cause of action by a preponderance of the evidence.

---

1. "Wrest once the law to your authority: To do a great right, do a little wrong." W. SHAKESPEARE, THE MERCHANT OF VENICE, Act IV, scene i.

W. PROSSER & W. KEETON, THE LAW OF TORTS § 38 (5th ed. 1984); E. CLEARY, McCORMICK ON EVIDENCE, § 337 (3d ed. 1984). This burden simply cannot be satisfied absent the introduction of legally sufficient evidence of each element of the cause of action. *Colvin v. Red Steel Co.*, 682 S.W.2d 243 (Tex.1984). One of the essential elements of a negligence case is causation, consisting of cause in fact and foreseeability. *City of Gladewater v. Pike*, 727 S.W.2d 514, 517 (Tex.1987). "Cause in fact means that the omission or act involved was a substantial factor in bringing about the injury and without which no harm would have occurred." *Id.; accord McClure v. Allied Stores of Texas, Inc.*, 608 S.W.2d 901, 903 (Tex.1980). Here, the plaintiffs relied on two types of evidence to sustain their burden of proof on cause in fact: circumstantial evidence and opinion evidence.

Although cause in fact may be established by circumstantial evidence, it may not be established by mere guess or conjecture; it must be proven by competent evidence. *Exxon Corp. v. Quinn*, 726 S.W.2d 17, 21 (Tex.1987). In a circumstantial evidence case the trier of fact is permitted to draw the claimed inference from facts proven; an inference being merely a deduction from the facts proved. *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898). And, although an ultimate fact may be proved by circumstantial evidence, such a finding must be based on inferences fairly drawn from the facts in evidence and not on surmise or speculation. *See Briones v. Levine's Dept. Store*, 446 S.W.2d 7, 10 (Tex.1969); *Prudential Ins. Co. v. Krayer*, 366 S.W.2d 779, 780 (Tex.1963). But, "[w]hen circumstances are consistent with either of ... two facts and nothing shows that one is more probable than the other, neither fact may be inferred." *Litton Indus. Products. v. Gammage*, 668 S.W.2d 319, 324 (Tex.1984) (citing *Texas Sling Co. v. Emanuel*, 431 S.W.2d 538 (Tex.1968)) and *Continental Casualty Co. v. Fountain*, 257 S.W.2d 338 (Tex.Civ.App.—Dallas 1953, writ ref'd).

Though one could easily speculate from the circumstances surrounding Diana Havner's disappearance from the store that she was abducted and murdered in the course of a robbery directed at the store, other facts are equally consistent with these circumstances. Each circumstance from which the jury could draw the inference argued by the Havners' attorneys also supports the inference that E–Z Mart's negligence[2] was not the cause in fact of her abduction and murder. It is just as likely, for instance, that Havner was murdered by an acquaintance for reasons personal to her rather than by a stranger and that she was taken by surprise when the encounter turned violent.

Dr. Norman Bottom, plaintiffs' expert witness cited by the Court in support of its conclusion testified, "[W]e must assume that robbery was the primary motive in this and abduction was a secondary motive." However, he agreed that he did not know if Havner was first approached by her abductor inside or outside the store. Later, he said: "I don't know exactly what happened. I don't think anyone does but the criminal." He also characterized Sulphur Springs Police Chief Donnie Lewis's opinion about what happened as "speculating ... not grounded on fact." He later agreed, in response to questions from E–Z Mart's lawyer, that Chief Lewis was just guessing. The principal investigating officer, Detective Sergeant Robert Stidham, also conceded that he didn't know what happened at the time of the robbery and abduction, "[o]ther than she left the store with the money with somebody."

E–Z Mart's expert witness, Dr. Lawrence Sherman, testified that in his opinion, Havner was abducted and murdered by an acquaintance. Further, Dr. Sherman testified that most murders of women are perpetrated by acquaintances, not strangers. However, he in effect admitted that this is only one inference which could be drawn from the evidence because "we just don't know because we don't have any par-

**2.** Although E–Z Mart has conceded its negligence in this appeal, the Court concentrates a disproportionate amount of its opinion on the store's negligence, suggesting that if E–Z Mart is negligent enough, causation does not really matter.

ticular suspect." Micky Holden, the store manager, testified that during the time Diana Havner's abduction and murder occurred she was dating Robert Crawford who lived in the apartment complex behind the store. According to Holden, Crawford was "high tempered" and would frequently come to the store, sometimes drunk, loud and belligerent. Holden testified that Diana had reported violent arguments with Crawford before her death. During one argument, Holden testified without objection, Havner told her Crawford had said: "[I]f he couldn't have her no one was going to have her."

Admittedly, this evidence does not prove that Havner was abducted by an acquaintance. The point is simply that it is no more likely that E–Z Mart's negligence caused Ms. Havner's abduction and murder than that it did not. Circumstantial evidence which does not make one fact more likely than another—in the eyes of the law—proves nothing.[3] Absent additional evidence, any person with an active imagination can make the facts and the evidence fit a number of different scenarios. Each and every theory relies only on speculation since they are equally probable. Each theory is only, at best, a guess.

Plaintiffs simply have not demonstrated by legally competent evidence that had there been an alarm or any other security measure that Havner would have activated it and that she would be alive today. Whether such devices would have deterred the crime cannot be demonstrated absent some sort of evidence of the circumstances of the crime.

What the Court has embraced is tantamount to the unwarranted application of the doctrine of res ipsa loquitur to the facts of this case. They have essentially held that E–Z Mart's negligence was presumptively the cause of Havner's death, absent proof to the contrary. However, the doctrine of res ipsa loquitur is applicable only when: 1) the character of the injury is such that it would not have occurred in the absence of negligence; and 2) the instrumentality which caused the injury is under the sole management and control of the defendant. *Gaulding v. Celotex Corp.,* 772 S.W.2d 66, 68 (Tex.1989); *Porterfield v. Brinegar,* 719 S.W.2d 558, 559 (Tex. 1986); *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245, 251 (Tex.1974). In a proper case this doctrine permits the trier of fact to infer negligence and causation; however it is the second element—the requirement of sole management and control of the instrumentality—that affords the probability that it was the claimed actor's negligence, and not some other's, that caused the harm. As the Court pointed out in *Gaulding:* "Inherent in the latter factor is the requirement that the defendant be proved to have some causal connection with the plaintiff's injury." *Id.* at 68. Clearly, this doctrine has no application to the facts of this case, yet it demonstrates the error of the Court's analysis.

Nor do the conclusions and opinions of Havner's expert witnesses provide the necessary proof of causation.[4] As noted by the court of appeals, these expert opinions are not based on direct evidence; their opinions are merely conclusions, guesses, which they are no better qualified to draw than the jury itself. Ordinarily, a lay witness is limited to testimony based on firsthand knowledge. Rule 701 of the Texas Rule of Civil Evidence expands that strict requirement slightly by permitting a lay witness to testify in the form of opinions

---

**3.** The Court says that "our careful review of the record reveals no evidence that anything but force caused Havner's departure." At 461, fn. 5. However, it is undisputed that there was no sign of struggle indicating force was used. But just as important, E–Z Mart was under no obligation to prove or disprove the circumstances under which Havner left the store. What the Court has, in fact, done is to *reverse* the burden of proof to require the defendant to prove the circumstances under which Havner exited the store. It should go without saying that it is the

plaintiffs' burden to prove its theory of the case, not the defendant's burden to disprove the plaintiffs' theory.

**4.** The majority relies on *Louder v. De Leon,* 754 S.W.2d 148 (Tex.1988) for the proposition that an independent investigating officer may testify as to causation. In fact, *Louder* holds that expert testimony on proximate cause, as an ultimate fact to be decided by the trier of fact, is admissible "as long as it is based on proper legal concepts." *Id.* at 149. The problem here, however, is that the expert testimony is not based on

which are 1) rationally based on the perception of the witness and 2) helpful to an understanding of his testimony or a determination of the fact at issue. Here, there is no showing that any opinion is rationally based on the perception of a witness. In other words, the purported evidence is only speculation. *See* WENDORF, SCHULUETER & BARTON, TEXAS RULES OF EVIDENCE MANUAL VII–11 (3d ed. 1991). Thus, the first requirement of the rule is not met.

Furthermore, expert testimony based on incompetent evidence is no evidence of cause in fact.[5] This is because Rule 703 of the Texas Rules of Civil Evidence requires the experts' opinion to be based on "facts or data." The Texas Rule, fashioned after the Federal Rule, contemplates three sources for such facts or data: 1) firsthand knowledge; 2) hypothetical questions based on admitted evidence; and 3) data acquired other than through the expert's personal perception, reasonably relied upon by experts in the given field. *See* NOTES OF ADVISORY COMMITTEE, FED.R.EVID. 703; *accord Chistophersen v. Allied Signal Corp.*, 939 F.2d 1106, 1110–11 (5th Cir.1991). Since there are no facts or data upon which the experts' conclusions can be founded, those conclusions cannot support the jury finding of proximate cause. As the Fifth Circuit Court of Appeals has observed: "If an opinion is fundamentally unsupported, then it offers no expert assistance to the jury." *Viterbo v. Dow Chemical Co.*, 826 F.2d 420, 422 (5th Cir. 1987). The specialized knowledge of the experts is simply of no assistance to the trier of fact under these circumstances. The jury is equally capable of engaging in the same speculation. Therefore, the experts' opinions are not helpful, but superfluous. *See e.g. Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex.1984); *Lopez v. City Towing Assoc.*, 754 S.W.2d 254, 260 (Tex.App.—San Antonio 1988, writ denied); *Thompson v. Mayes*, 707 S.W.2d 951, 957 (Tex.App.—Eastland 1986, writ ref'd n.r.e.); WENDORF, SCHULUETER & BARTON, TEXAS RULES OF EVIDENCE MANUAL VII–15–16 (3d ed. 1991).

There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained laymen would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute.

Ladd, *Expert Testimony*, 5 VAND.L.REV. 414, 418 (1952) (cited in NOTES OF ADVISORY COMMITTEE, FED.R.EVID. 702). And, such speculation can no more support an expert opinion than it can support a judgment in a circumstantial evidence case based on competing, but equally probable, inferences from the evidence. Such evidence is simply too tenuous a basis for rendition of a judgment in a court of law.

The reliance on opinion testimony which the Court encourages today will not prove workable. Opinion testimony like that offered in this case—that something *could* be, or is *possible*, or *might* have happened—cannot support a judgment. If the Court really means to allow such evidence, the result will be not a trial of the disputed facts, but a trial of disputed opinions by experts. The Court is well aware that

---

facts and data, but only on speculation. As such, it amounts to no evidence.

**5.** Contrary to the court's implication, at 460 n. 4, E–Z Mart did not waive this error by not objecting to the experts' speculative opinion testimony. E–Z Mart's complaint, preserved in the trial court, is that there was no evidence to support the jury's finding that E–Z Mart's negligence caused Havner's death. A no evidence point of error may be preserved in the trial court by a motion for instructed verdict, by an objection to the charge, by a motion to disregard a jury finding, by a motion for judgment non obstante veredicto, or by a motion for new trial. *Cecil v. Smith*, 804 S.W.2d 509, 510–511 (Tex.1991); POWERS & RATLIFF, ANOTHER LOOK AT "NO EVIDENCE" AND "INSUFFICIENT EVIDENCE," 69 TEX.L.REV. 515, 530 (1991). E–Z Mart raised its no evidence complaints on this point at least four times in the trial court: in its motion for instructed verdict, in its objections to the charge, in its motion for judgment non obstante veredicto, and in its motion for new trial. As a result, E–Z Mart preserved its no evidence points of error regardless of the fact it did not object to the speculative nature of the opinion testimony.

most experts that offer opinion testimony are paid a fee for their investigation and rendition of opinions in a case.[6] The corrupting influence of such a scheme appears obvious.

Absent evidence of the essential but-for element of proximate cause in a negligence cause of action, the plaintiffs' cause of action must fail. *See Yap v. ANR Freight Systems, Inc.*, 789 S.W.2d 424 (Tex.App.—Houston [1st Dist.] 1990, no writ); *Hennessy v. Estate of Perez*, 725 S.W.2d 507 (Tex.App.—Houston [1st Dist.] 1987, no writ). Despite the sympathetic facts of this case and E–Z Mart's conceded negligence in failing to provide security measures of any sort, there is no evidence to support the jury's finding that but for E–Z Mart's failure to provide security measures Diana Havner would be alive and unharmed today.

The essence of the Court's holding has broad ramifications for the public policy of our state. The Court directs the public's rightful outrage about the rising level of crime toward businesses like E–Z Mart when there is no evidence that E–Z Mart's negligence caused Diana Havner's abduction and murder. In effect, the requirements of proof in a case like this against a convenience store are relaxed. Perhaps it is because the Court shares the public's sense of impotency and frustration at being unable to direct their vengeance toward an unknown assailant that the Court excuses the lack of proof of a causal link between E–Z Mart's negligence and Diana Havner's death.[7] Because I disagree that an award of money damages as a result of lawlessness in our society ought to be visited on any person or entity absent competent proof that their negligence actually caused

those damages, I would affirm the judgment of the court of appeals.

HECHT, J., joins in this dissent.

---

**6.** Judge Learned Hand referred to such experts as the "hired champion of one side." L. HAND, HISTORICAL AND PRACTICAL CONSIDERATIONS REGARDING EXPERT TESTIMONY, 15 HARV.L.REV. 40, 53 (1901). And, it is common knowledge among trial practitioners that such witnesses often become highly proficient at "the art of witness advocacy." *See* COMMENT, EXPLORING THE INCONSISTENCIES OF SCRUTINIZING EXPERT WITNESS TESTIMONY UNDER THE FEDERAL RULES OF EVIDENCE, 22 TEX.TECH.L.REV. 885, 894 (1991).

**7.** The Court hyperbolically suggests that any alternative to its holding "would, in almost every concievable circumstance, make redress impossible for the family of a victim killed in an unwitnessed occurrence regardless of the strength of the circumstantial evidence." At 461. This dissent suggests nothing of the kind. All that is proposed is that each case be decided on its unique facts and record, and that plaintiffs' have failed to discharge their burden of proof in this case.