NO. 12-00-00221-CV


IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS

 § APPEAL FROM THE 321ST


IN THE INTEREST OF A.E.,

A CHILD § JUDICIAL DISTRICT COURT OF



 § SMITH COUNTY, TEXAS





 Melody Everhart ("Everhart") appeals the order of the trial court terminating her parental
rights as to her son ("A.E."). In two issues, Everhart contends that the evidence was neither legally
nor factually sufficient to support the trial court's order terminating her parental rights. We affirm.


Background

 In May 1995, Everhart gave birth to A.E. The record reflects that A.E.'s father is unknown. 
In January 1998, Everhart was arrested for injuring A.E., who was then two years old. The record
reflects that Everhart was inside a public library with A.E. A.E. began to cry, so Everhart picked
A.E. up by the arm and took him outside. Once outside, the evidence is undisputed that Everhart hit
A.E. several times, causing him to fall to the ground, at which point, she kicked him. Everhart then
went inside to the bathroom, leaving A.E. outside. When police arrived at the library, A.E. was
outside with the security guard. A.E. was found to be extremely dirty with a soiled diaper, which
he appeared to have been wearing for several hours. Everhart was inside the library reading a book. 
When asked why she was inside and her son outside, Everhart replied that she knew her son was
being taken care of. When asked about kicking the child, she responded that she only kicked him
once. Everhart further stated that none of this would have happened had the librarian taken care of
her son while she was reading, and that everybody should mind their own business. Everhart was
arrested, pled guilty to injury to a child and was sentenced to four years of confinement. While
serving her sentence, Everhart was written up on a number of cases. (1) As a result, she will not be
eligible for parole prior to serving her full sentence. 

 As requested by Everhart, A.E. was initially placed in the care of Karen Sikini ("Sikini"). 
However, on April 16, 1999, A.E. was removed by the State from Sikini's care because of potential
medical neglect and because Sikini stated that she could no longer care for A.E. and wanted him out
of her home immediately. Finding that placement of A.E. with his grandmother, Joy Everhart, was
unsuitable, the State of Texas (the "State") placed A.E. with his present foster family, the Miltons. 
The record reflects that A.E. has bonded well with the Miltons and they wish to adopt him. 


Standard of Review

 The evidence offered to support termination of parental rights must be clear and convincing
before a court may terminate parental rights. See In the Matter of B.R., 822 S.W.2d 103,106 (Tex.
App.- Tyler 1991 writ denied). Furthermore, in reviewing the evidence, we will apply the
appropriate standard of review prescribed for "no evidence" and "insufficient evidence" points. Id.

 In reviewing a no evidence point, we must consider only the evidence and inferences that
tend to support the jury's verdict, disregarding all contrary evidence and inferences. See Wal-Mart
Stores, Inc. v. Gonzalez, 968 S.W.2d 934, 936 (Tex. 1998). We may only sustain a "no evidence"
point when the record discloses one of the following: (1) a complete absence of evidence of a vital
fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence
offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere
scintilla of evidence, or (4) the evidence establishes conclusively the opposite of a vital fact. See
Merrell Dow Pharmaceuticals, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). It is not within
our power to second guess the fact-finder unless only one inference can be drawn from the evidence. 
See Havner v. E-Z Mart Stores, Inc., 825 S.W.2d 456, 461 (Tex. 1992). If there is more than a
scintilla of evidence to support the finding, the evidence is legally sufficient. See Browning-Ferris,
Inc. v. Reyna, 865 S.W.2d 925, 928 (Tex. 1993). 

 On the other hand, when evaluating a factual sufficiency challenge, we will consider and
weigh all of the evidence in the case, both evidence supporting the verdict and evidence which tends
to contradict the facts upon which the jury based its verdict. See In re King's Estate, 244 S.W.2d
660, 661 (Tex. 1951). We may not substitute our conclusions for those of the fact-finder and will
reverse only if we conclude that the verdict is so against the great weight and preponderance of the
evidence as to be manifestly unjust. Id.


Applicable Law

 The court may order termination of the parent-child relationship if the court finds by clear
and convincing evidence (1) that the parent has knowingly engaged in criminal conduct that has
resulted in the parent's conviction of an offense and confinement or imprisonment and inability to
care for the child for not less than two years from the date of filing the petition, and (2) that
termination is in the best interest of the child. Tex. Fam. Code § 161.001(1)(Q) and (2) (Vernon
Supp. 2001). In determining the child's best interest, the trial court should consider factors
including: (1) the desires of the child, (2) the emotional and physical needs of the child now and in
the future, (3) the emotional and physical danger to the child now and in the future, (4) the parental
abilities of the individuals seeking custody, (5) the programs available to assist these individuals to
promote the best interest of the child, (6) the plans for the child by these individuals or by the agency
seeking custody, (7) the stability of the home or proposed placement, (8) the acts or omissions of the
parent which may indicate that the existing parent-child relationship is not a proper one, and (9) any
excuse for the acts or omissions of the parent. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.
1976).



Discussion

 Everhart contends that the evidence was insufficient to support the termination of her parental
rights. We disagree. The record reflects that Everhart knowingly hit and kicked A.E. outside of a
public library, leaving him while she returned to her reading inside the library. As a result, Everhart
was arrested, pled guilty to the felony offense of injury to a child (2), was sentenced to four years of
confinement and began serving her sentence on May 15, 1998. On April 19, 1999, following the
State's removal of A.E. from Sikini, who was no longer willing or able to care for him, the State
filed its petition for involuntary termination of the parent-child relationship. Self testified that
Everhart would not be eligible for parole prior to the end of her sentence in May 2002. 

 Additionally, the record reflects that Everhart requested that A.E. live with her mother, Joy
Everhart. However, following a home study, the State determined that placement of A.E. with Joy
Everhart would be unsuitable due to Joy Everhart's history with Child Protective Services, which
included prior allegations by Everhart that Joy Everhart and Everhart's grandmother subjected her
to physical and emotional abuse throughout her childhood. (3) There is further evidence that since the
State could not locate any relatives of Everhart with whom to place A.E., A.E. was placed with his
current foster family, the Mitons. The foregoing evidence is almost entirely uncontradicted. Thus,
we conclude that there is legally sufficient evidence of a clear and convincing character on which
the trial court could have based its finding that Everhart was convicted of criminal conduct, in which
she knowingly engaged, which resulted in her confinement for a period of more than two years,
during which time she was unable to care for her child. Moreover, our review of the record in its
entirety does not reveal any evidence which contradicts the foregoing evidence in such a way that
would cause us to conclude that the trial court's finding was so against the great weight and
preponderance of the clear and convincing evidence as to be manifestly unjust. See In re King's
Estate, 244 S.W.2d at 661.

 We next consider whether the termination of Everhart's parental rights is in A.E.'s best
interest. There is a strong presumption that the best interest of the child is served by keeping custody
in the natural parent. See In the Interest of K.C.M, 4 S.W.3d 392, 395 (Tex. App.-Houston [1st
Dist.] 1999, pet. denied). It is the State's burden to rebut this presumption. Id. 

 We first consider the desires of the child. See Holley, 544 S.W.2d at 372. Although A.E.
did not testify, the record reflects that he has bonded well with the Miltons. The record further
reflects that A.E. remembers Everhart as his "old mother" who kicked him. Moreover, there is
evidence that on one occasion, during a Christmas Party for foster families, A.E. saw Kathryn
Blalock, his case worker from Child Protective Services, and clung to his foster father, Reverend
Milton ("Milton"), pleading that Milton not leave him. Thus, although there is no specific testimony
from A.E., there is some evidence indicating that it is his desire to remain with the Miltons.

 We next consider the emotional and physical needs of the child now and in the future. See
Holley, 544 S.W.2d at 372. The record reflects that when A.E. was first placed with the Miltons,
he was reserved and shy. Milton testified that although A.E. was polite, he would choke and bite
other children, both at home and at daycare. However, Milton further testified that A.E.'s behavior
improved over time. On the other hand, according to Milton's testimony, on occasions during which
A.E. would have contact with Everhart, his behavior would regress and he began fighting and biting
other children once more. Further, there is evidence that following contact with Everhart, A.E.
suffered from sleeplessness and bed-wetting. However, the record reflects that as time passed with
A.E. in the Miltons' care, and further contact between A.E. and Everhart ceased, A.E.'s behavior,
once again, improved. 

 Next, we consider the emotional and physical danger to the child now and in the future. See
Holley, 544 S.W.2d at 372. The evidence is undisputed that Everhart hit and kicked A.E., who was
then two years old, and left him outside a public library. Based on these facts Everhart pleaded
guilty to injury to a child. Although Everhart argues that there is no evidence that A.E. sustained
serious injury, we reiterate that there is no dispute as to the fact that Everhart hit and kicked A.E. and
left him outside a public library. During the hearing Everhart was questioned regarding her behavior
at the library and asked whether she thought she could have handled the situation better. In response,
Everhart stated, "I don't know if I could have. Well, I wish that I would have. I don't - I can't go
back and say could I have done it. I just say I wish I would have." Further, the record reflects that
Everhart requested that her mother, Joy Everhart, be permitted to care for A.E. Given this request,
we cannot overlook the fact that, in her brief, Everhart describes in great detail how Joy Everhart
physically and emotionally abused Everhart throughout her childhood. By her request, Everhart
seeks to expose her child to an historically violent environment with which she had first-hand
experience during her childhood. Everhart's request raises a tremendous concern as to probable
emotional and physical danger to A.E. if Everhart's parental rights are not revoked. To the contrary,
Everhart concedes that A.E. is flourishing and bonding with his foster family. The record is devoid
of any facts suggesting that A.E. faces any emotional or physical danger if he is adopted by the
Miltons.

 We will consider the next four factors together. These factors involve the parental abilities
of the individuals seeking custody, programs available to assist these individuals, the plans these
individuals have for the child, and the stability of the home. See Holley, 544 S.W.2d at 372. 
Everhart concedes in her brief that the Miltons offer nothing short of a great environment for A.E. 
Milton's testimony bolsters Everhart's concession. Milton recognizes A.E.'s intelligence and
testified that A.E. has a good singing voice. He testified that he is considering enrolling A.E. in St.
Gregory's School. Milton further testified that he has begun to prepare financially for A.E.'s college
education. Milton testified that he has three grown step-children and three adopted children close
in age to A.E. There is no evidence of record or argument by Everhart that contradicts evidence that
the Miltons have exceedingly high parental abilities and a stable home, are familiar, due to their
experience with their other adopted children, with ways to promote A.E.'s best interest, and have
already begun to make plans for A.E.'s education, both now and in the future.

 Finally, we consider the acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one and any excuse for the acts or omissions of the parent.
See Holley, 544 S.W.2d at 372. Such consideration returns us to the undisputed fact that Everhart
hit and kicked A.E., who was then two years old, and left him outside a public library. In her brief,
Everhart states that she regrets the incident. While her regret may be genuine, such regret considered
in conjunction with her testimony that she does not know if she could have handled the situation at
the library better, does not amount to any kind of excuse for her behavior. To the contrary, it
indicates that she still does not know of any better way to handle such a situation.

 The foregoing evidence relating to A.E.'s best interest is almost entirely uncontradicted. 
Having reviewed the factors set forth in Holley, we conclude that there was legally sufficient
evidence of a clear and convincing nature to permit the trial court to conclude that the State rebutted
the presumption that it was in A.E.'s best interest that Everhart retain custody. Moreover, our review
of the record in its entirety does not reveal any evidence which contradicts the foregoing evidence
in such a way that would cause us to conclude that the trial court's finding was so against the great
weight and preponderance of the clear and convincing evidence as to be manifestly unjust. See In
re King's Estate, 244 S.W.2d at 661. Everhart's issues one and two are overruled.

 Accordingly, the trial court's order terminating parent-child relationship is affirmed.

 

 JIM WORTHEN 

 Justice



Opinion delivered July 25, 2001.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.










(DO NOT PUBLISH)

1. In this context, the word "case" means a negative report resulting from misconduct while incarcerated. 
According to the testimony offered by Shirley Self ("Self"), Chief of Classification at the Texas Department of
Criminal Justice, Hobby Unit, when a prisoner receives a certain number of cases, their status decreases, the result of
which is typically greater restrictions placed on that prisoner. When Everhart began serving her sentence, her status
was "line 1." At the time of the hearing, Everhart's status had been decreased to "line 3." Self testified that in order
to be eligible for parole, she would have to re-achieve "line 1" status, which cannot possibly occur prior to the end of
her four year sentence.
2. See Tex. Pen. Code Ann. §22.04 (Vernon Supp. 2001).
3. The record reflects that during her teen years, Everhart was removed from her mother's home due to
allegations that both her mother and her grandmother beat her with, among other implements, an extension cord.