# NO. 12-17-00208-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *DAVID SEALS,* *APPELLANT* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW* |
| *KETURAH WILBOURN,* *APPELLEE* | § | *ANDERSON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

David Seals challenges a protective order entered in favor of Keturah Wilbourn under Chapter 7A of the Texas Code of Criminal Procedure. In a single issue, he argues that the evidence is legally and factually insufficient to support the order. We affirm.

## BACKGROUND

In February 2017, Wilbourn filed an application for a protective order against Seals under Chapter 7A of the Texas Code of Criminal Procedure, which allows a trial court to issue a protective order in favor of an applicant that the trial court has "reasonable grounds" to believe is a victim of the Texas Penal Code's stalking statute. Wilbourn sought the order in response to interactions she had with Seals over approximately seven months. These events began in August 2016 and included text messages, letters, and voicemails. In her supporting affidavit, Wilbourn averred that Seals threatened to publish an article in the newspaper to humiliate her family, threatened to appear at her child's game to make himself known to her children against her wishes, and contacted her after she requested to be left alone. The trial court signed a temporary ex parte protective order on February 23, 2017 and scheduled a hearing. Seals subsequently entered a general denial.

After an evidentiary hearing, the trial court granted a lifetime protective order. Seals filed a motion for new trial, which the trial court denied. This appeal followed.

<h2 style="text-align:center">EVIDENTIARY SUFFICIENCY</h2>

In his only issue, Seals contends that the evidence is legally and factually insufficient to support the protective order under Chapter 7A of the code of criminal procedure.

## Standard of Review

When the trial court is a factfinder, such as when it makes findings to determine whether to issue a protective order, we review the evidence supporting the protective order under both legal and factual sufficiency standards. *In re Doe,* 19 S.W.3d 249, 253 (Tex. 2000); *Vongontard v. Tippit,* 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.); *Shoemaker v. State for Prot. of C.L.,* 493 S.W.3d 710, 714 (Tex. App.—Houston [1st Dist.] 2016, no pet.). Under a legal sufficiency standard, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson,* 168 S.W.3d 802, 827 (Tex. 2005); *City of Houston v. Hildebrandt,* 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue." *Hildebrandt,* 265 S.W.3d at 27.

Under a factual sufficiency challenge, we examine all of the record evidence and set aside the trial court's order only if it is "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex. 1996); *Kroger Co. v. Persley,* 261 S.W.3d 316, 319 (Tex. App.—Houston [1st Dist.] 2008, no pet.). The factfinder is the exclusive judge of which facts have been proven, which witness is credible, and the weight to be given any witness's testimony. *Turner v. KTRK Television, Inc.,* 38 S.W.3d 103, 134 (Tex. 2000); *Benoit v. Wilson,* 239 S.W.2d 792, 796-97 (1951).

When conflicting evidence exists, the factfinder may believe one witness and disbelieve others. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986); *CCC Grp., Inc. v. S. Cent. Cement, Ltd.,* 450 S.W.3d 191, 196 (Tex. App.—Houston [1st Dist.] 2014, no pet.). The factfinder is permitted to resolve inconsistencies in the testimony of any witness. *McGalliard,* 722 S.W.2d at 697. It may draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English,* 500 S.W.2d 461, 467 (Tex. 1973); *Lakner v. Van Houten,*

No. 01–09–00422–CV, 2011 WL 1233381, at *3 (Tex. App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem. op.). We will not overturn a factfinder's determination unless only one inference can be drawn from the evidence and it opposes the factfinder's resolution of that issue. *Havner v. E–Z Mart Stores, Inc.,* 825 S.W.2d 456, 461 (Tex.1992).

**Applicable Law**

The code of criminal procedure grants a trial court authority to issue a protective order "without regard to the relationship between the applicant and the alleged offender" if the applicant is a victim of certain crimes. TEX. CODE CRIM. PROC. ANN. art. 7A.01(a)(1) (West Supp. 2017). Stalking is one such offense for which an applicant may seek and obtain a protective order under Chapter 7A. *See id*.; *see also* TEX. PENAL CODE ANN. § 42.072 (West 2016) (offense of stalking). According to the penal code, a person may commit the criminal offense of stalking through the act of harassment:

> (a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:
>> (1) constitutes an offense under Section 42.07 ...;
>> (2) causes the other person ... to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and
>> (3) would cause a reasonable person to ...
>>> (D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

TEX. PENAL CODE ANN. § 42.072(a). Under section 42.07, a person harasses another if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," he "sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id*. at § 42.07(a)(7) (West Supp. 2017). Thus, as applicable to the present case, a Chapter 7A protective order may be issued against a person who (1) on more than one occasion, knowingly harassed another person, i.e., with intent to harass, annoy, alarm, abuse, torment, or embarrass another, sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another, (2) which caused that person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended, and (3) would cause a reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *Id*. §§ 42.07(a)(7), 42.072(a). A trial court must grant the protective order if it determines that "there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking." TEX.

3

CODE CRIM. PROC. ANN. art. 7A.03 (West 2015). "A protective order issued under Article 7A.03 may be effective for the duration of the lives of the offender and victim or for any shorter period stated in the order." *Id*. art. 7A.07(a) (West 2005).

**Analysis**

In this case, Seals contends there was insufficient evidence of harassment, and that the protective order is both inappropriate and excessive in length. He further contends that the evidence does not support that he harassed Wilbourn's husband or children.

At the protective order hearing, Wilbourn testified that Seals is her father and that their relationship has been on and off. She stated that ten years passed since she last had contact with him, until she received a Facebook friend request from Seals in August 2014. She agreed to begin exchanging e-mails to see if they could develop a healthy relationship. However, she did not allow her children to have contact with him because she did not want a "toxic" person in their lives. Wilbourn testified that the attempt at a reconnection went well until July 2016 when she did not want to go visit Seals because she "remembered something from [her] childhood that [she] was trying to process." She also testified that a "blowup" occurred over Seals taking a defensive driving class, and they argued over the phone. At this point, she asked Seals to not contact her for one week, but he called her two days later. She also received multiple text messages from Seals, ranging from calling her a liar to calling her husband an idiot and a coward.

On August 1, Wilbourn left a voicemail on Seals's phone and sent him a text message "officially requesting" to not be contacted and telling him that he was not welcome on her property. According to Wilbourn, after that, she received numerous text messages from Seals. She repeated her request to not be contacted. Her husband also told Seals not to contact them anymore. The Wilbourns contacted their phone company and blocked Seals's numbers on August 4. On August 9, they received a letter threatening to sue them for gifts Seals gave them. Wilbourn's husband responded to the letter and requested no further contact.

In January 2017, the Wilbourns received a letter threatening to send an article to the newspaper to humiliate Wilbourn and her husband. Seals had signed the letter. A few days later, she received another letter from Seals regarding her sister's statement that she too wanted no contact with him. In the letter, Seals threatened to show up at Wilbourn's son's game. Although Seals's numbers were previously blocked, Wilbourn received two text messages from Seals on

February 8 and voicemails on February 24 and March 4 saying that he would be in town. The Wilbourns contacted the sheriff's office because they felt the need for further precautions to keep Seals from their children.

During his testimony, Seals admitted that Wilbourn told him not to contact her in August 2016. He further stated that he continued to reach out to her and that she did not attempt to contact him. However, Seals denied making any threats and testified that he told Wilbourn that an attorney said he could sue her for certain statements she made about Seals. According to Seals, Wilbourn accused him of having a "sexual disease" that he transmitted to her mother. Seals deemed these accusations to be false. Seals further explained that Wilbourn told him she would return his gifts so that she would have no reminders of him. When the items were returned, the package was addressed to "David Sh--head Seals," which he took as offensive. He admitted notifying Wilbourn on certain occasions when he would be passing through the area merely as informative. He confirmed that he never had any contact with Wilbourn's children.

At the conclusion of the hearing, the trial court stated, "Based on the evidence, I'll find a course of past conduct and the likelihood of continuing conduct in the future, and based on those findings, I grant the requested relief – the Protective Order is imposed for life…." The written order states, in pertinent part, that:

> [Seals] has committed an offense under Section … 42.072 … against the Applicant or Child(ren) named below. The Applicant and/or Child(ren) named below is/are the subject of a threat that reasonably places him/her in fear of further harm from [Seals]. The Court further finds that the following orders are necessary for the safety, welfare, and protection of the Applicant and/or Child(ren) and other members of the family or household who are affected by this suit.

The order applied to Wilbourn, her husband, and her children for the life of the parties.

We first note that, as previously stated, a protective order under Article 7A.03, may be effective for the duration of the parties' lives. *See* TEX. CODE CRIM. PROC. ANN. art. 7A.03(a). Moreover, the statute specifically authorizes the trial court to issue a protective order that applies not only to the applicant, but to the applicant's family or household. *See id*. art. 7A.05 (West Supp. 2017) (conditions specified by order). Accordingly, we reject Seals's contention that the lifetime protective order for the Wilbourns is excessive and inappropriate.

We likewise reject Seals's contention that the evidence is insufficient to support the order. As factfinder, the trial court was entitled to accept Wilbourn's testimony at the protective

order hearing and reject that of Seals.  *See Turner*, 38 S.W.3d at 134; *see also McGalliard*, 722 S.W.2d at 697; *CCC Grp., Inc.,* 450 S.W.3d at 196. Based on Wilbourn's testimony, the trial court could have reasonably determined that (1) on more than one occasion, Seals knowingly sent multiple electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend Wilbourn and her family; and (2) those communications were calculated to, and did in fact, harass, annoy, embarrass, or offend the Wilbourns.  *See* TEX. PENAL CODE ANN. § 42.07(a)(7).  This is particularly true given that Seals repeatedly attempted to contact Wilbourn after being expressly told not to do so, which he acknowledged.  And in those communications, Seals not only called Wilbourn and her husband names, but threatened to sue and humiliate Wilbourn and her husband, as well as contact her children, which she had asked him to not do.  Given evidence that Seals's communications were intended and reasonably likely to harass, annoy, embarrass, abuse, and offend Wilbourn and her family, the trial court had reasonable grounds to find that Wilbourn was the victim of stalking; consequently, the trial court was required to issue a protective order.  *See* TEX. CODE CRIM. PROC. ANN. art. 7A.03; *see also Shoemaker*, 493 S.W.3d at 719.

Accordingly, viewing the evidence in the light most favorable to Wilbourn, we conclude that more than a scintilla of evidence exists to support the trial court's order.  *See Wilson*, 168 S.W.3d at 827; *see also Hildebrandt,* 265 S.W.3d at 27.  We further conclude that the trial court's order is not so against the great weight and preponderance of the evidence as to be clearly wrong and unjust.  *See Ortiz*, 917 S.W.2d at 772.  Because the evidence is legally and factually sufficient to support the trial court's protective order, we overrule Seals's sole issue.

### DISPOSITION

Having overruled Seals's single issue, we *affirm* the trial court's judgment.


BRIAN HOYLE
Justice

Opinion delivered March 7, 2018.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*


(PUBLISH)


6



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 7, 2018**

**NO. 12-17-00208-CV**

**DAVID SEALS,**
Appellant
V.
**KETURAH WILBOURN,**
Appellee

___

Appeal from the County Court at Law

of Anderson County, Texas (Tr.Ct.No. CCL-17-15434)

___

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellant, **DAVID SEALS,** for which execution may issue, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*