**Daniel SHOEMAKER, Appellant**

v.

**STATE of Texas FOR the PROTECTION OF C.L., Appellee**

NO. 01–15–00371–CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued May 3, 2016

Brian H. Buster, Christopher A. Bean, Austin, TX, for Appellant.

David A. Escamilla, Travis County Attorney's Office, Hilary L. Riley, Assistant County Attorney, Austin, TX, for Appellee.

Panel consists of Justices Bland, Brown, and Lloyd.

## OPINION

Harvey Brown, Justice

Daniel Shoemaker challenges a protective order entered in favor of Clarissa[2] under Chapter 7A of the Texas Code of Criminal Procedure. He argues that (1) legally and factually insufficient evidence exists to support the order and (2) provisions of the statute allowing a trial court to issue a protective order in favor of a complainant who is a victim of the defendant's stalking violate the constitutional right to due process. We affirm.

## Background

In October 2014, Clarissa, through the Travis County Attorney's Office, filed an application for a protective order against Shoemaker under article 7A of the Texas Code of Criminal Procedure, which allows a trial court to issue a protective order in favor of a person that the trial court has "reasonable grounds" to believe is a victim of a stalking statute, Section 42.072 of the Penal Code. Clarissa sought the order in response to interactions she had with Shoemaker over a six-year period. These events began in 2008 when Clarissa and Shoemaker were coworkers at a school and culminated in 2014 with an email Shoemaker sent Clarissa. After an evidentiary hearing, the trial court granted the protective order.

### A. Contact at school

Clarissa and Shoemaker were co-workers at Parkside Community School "for a few months" in 2008 and 2009. Shoemaker taught guitar at the school, and Clarissa was "lead guide." They worked in different buildings at the school.

According to Clarissa's testimony at the protective-order hearing, Shoemaker invited her to different functions but she declined his invitations. He then began confronting her in front of other co-workers and when she was alone in her classroom. Clarissa testified that Shoemaker was "persistent and aggressive" and would enter her "classroom uninvited and unannounced multiple times. He sometimes would come in while [she] was on the computer and [her] back was to the door, would sneak up behind [her] and demand to know why [she] was not returning his advances."

Two co-workers also testified that Shoemaker visited Clarissa in her classroom. The first testified that she heard Clarissa ask Shoemaker to leave: "I heard her say you can't come into my classroom demanding my attention like this, and he said well you better get used to it[;] I'm going to be around for a long time." The second co-worker likewise testified that Shoemaker harassed Clarissa. She testified that Shoemaker kept "probing" Clarissa on why she would not go out with him, then his "tone of voice changed[,] kind of got a

---

2. To protect her privacy, we identify the complainant by a pseudonym only.

little agitated . . . it was the constant probing that made me uncomfortable."

Eventually, Clarissa sent Shoemaker an email telling him that she "did not want any more contact from him at all." But Shoemaker still continued to enter her classroom and contact her in person and via email and text messaging. As a result, Shoemaker's supervisor, Joe Bruno, told him not to come near Clarissa, her classroom, or her building. According to Bruno, Shoemaker violated these instructions. Because of his "harassments" of Clarissa, Bruno fired Shoemaker in February 2009. Bruno's wife, who was friends with Clarissa, testified that she feared that Shoemaker would harass Clarissa and asked Clarissa to "spend the night somewhere else besides her apartment," the night Shoemaker was fired.

Shoemaker denied that he violated his employer's instructions, that any such instructions existed, or that he threatened any member of the school. He agreed that he asked Clarissa out multiple times, but he claimed that he was not harassing her; on at least one occasion, for example, he testified that she said she would "take a rain check" on his invitation.

## B. Hike and bike trail

In April 2009, Clarissa encountered Shoemaker while on a hike and bike trail with a friend. Clarissa testified that Shoemaker "began to follow us and then he verbally attacked me getting into my face and . . . yelled what is your f—ing problem, where is your f—ing integrity you got me fired. . . . [H]e kept pushing and getting in my face and screaming obscenities at me." Her friend "intervened and got in his face and he backed down." Clarissa's friend also testified that Shoemaker was "very confrontational," "very aggressive," "very aggravated," and "very, very angry" when he confronted Clarissa and that the

friend "stepped in between them to break them up." Shoemaker acknowledged the interaction during his testimony, but he denied that he was "threatening" Clarissa.

## C. Cactus Café

In February 2011, Clarissa and Bruno attended a concert at Cactus Café. Clarissa testified that she saw Shoemaker looking at her "aggressively" at the café and that she "was frightened . . . that he was going to do something to me, attack me or humiliate me or something."

Later that night, someone shoved her and she fell into Bruno. Although she did not see Shoemaker push her, she felt certain it was him. She filed assault charges against Shoemaker, but they were dismissed because she failed to appear at a hearing on the charges.

Bruno testified that he saw Shoemaker "mosey around behind us and pretend to trip and fall into [Clarissa], and next thing I knew she was pushed into me." He received a text from Shoemaker the following day that said that it was "great to see you all there, and then went downhill from there to you two are the most despicable pair of people I've ever met, and Joe Bruno you should have your teeth kicked in."

Two witnesses at the Cactus Café that evening testified that they did not witness any shoving, although neither saw Clarissa at the café. Shoemaker likewise denied that he shoved Clarissa. Shoemaker also claimed that the text he sent Bruno was not meant literally.

## D. Yelp review

In March 2013, Shoemaker posted a Yelp review of the school where he formerly worked with Clarissa. In that review, he calls Clarissa a "diva with her opera and theater background, in addition to being [Bruno's] favorite teacher." He public-

ly quoted statements, allegedly made by Bruno, that Clarissa was a "high-maintenance woman" who would "always have trouble finding a mate" in that review. Shoemaker blamed Clarissa for his dismissal from the school. He accused Clarissa of "trying to get" him fired and of "concocting" the Cactus Café incident. At the end of the review, after complaining of both Clarissa and Bruno, he wrote that he has "never met anyone more deserving of getting kicked right in the teeth."

### E. 2014 email

In 2014, Shoemaker sent Clarissa an email that she considered "malicious and threatening." It said:

> No productions for this fall, eh? Karma's a b—. I guess enough people read the review I left on Google, almost 9,000 reads at this point, and figured out what a psychotic freak you are.... As long as you and [Bruno] don't come clean from what you did to me, I will make it my mission to always spread the truth about you two. Always.

### F. 2014 Apartment incident

Clarissa testified that shortly after receiving the 2014 email, she came home from work and "saw [Shoemaker] sitting in front of my apartment in his car. [She was] not 100 percent sure it was him, but [she] believe[d] it was him." After first seeing Shoemaker, she "stepped back behind some trees ... [and] waited a moment, and [ ] saw him slowly drive past [her] apartment and the other apartments." She reported this incident to the police and filed for a protective order. Shoemaker denies that he was that person because he (and one of his students who corroborated Shoemaker's testimony) was at a concert in another city that day.

### G. Protective order

At the evidentiary hearing on the protective order, the trial judge said he did not give any weight to the apartment incident when deciding whether to issue a protective order because of the student's and Shoemaker's testimony. But because of the other incidents, the trial court found that "reasonable grounds exist to believe [Clarissa] has been the victim of stalking." It issued a protective order prohibiting Shoemaker from committing acts of family violence against Clarissa or any member of her family, committing any actions that would reasonably place her or a member of her family in fear of physical harm, bodily injury, assault, or sexual assault, or communicating with Clarissa or her family. Additionally, Shoemaker's use of firearms is restricted under the order. This protective order is effective against Shoemaker for 10 years. Shoemaker appeals that order.

## Sufficiency of Evidence for Order under Code of Criminal Procedure

As an initial matter, Shoemaker argues that, because of the timing of changes to the stalking statute, the trial court should have considered only those incidents that occurred after 2011: namely, (1) the 2014 apartment incident and (2) the 2014 email. After limiting the review to only those two incidents, Shoemaker contends that there is not legally or factually sufficient evidence to support the protective order.

### A. Standard of review

When the trial court is a factfinder, such as when it is making findings to determine whether to issue a protective order, we review the evidence supporting the protective order under both legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex.2000); *Vongontard v.*

*Tippit*, 137 S.W.3d 109, 112 (Tex.App.—Houston [1st Dist.] 2004, no pet.). Under a legal sufficiency standard, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex.App.—Houston [1st Dist.] 2008, pet. denied). "If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue." *Hildebrandt*, 265 S.W.3d at 27.

Under a factual sufficiency challenge, we examine all of the record evidence and set aside the trial court's order only if it is "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996); *Kroger Co. v. Persley*, 261 S.W.3d 316, 319 (Tex.App.—Houston [1st Dist.] 2008, no pet.). The factfinder is the exclusive judge of which facts have been proven, which witness is credible, and the weight to be given any witness's testimony. *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 134 (Tex.2000); *Benoit v. Wilson*, 150 Tex. 273, 239 S.W.2d 792, 796–97 (1951).

When conflicting evidence exists, the factfinder may believe one witness and disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex.1986); *CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 196 (Tex.App.—Houston [1st Dist.] 2014, no pet.). The factfinder is permitted to resolve inconsistencies in the testimony of any witness. *McGalliard*, 722 S.W.2d at 697. It may draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex.1973); *Lakner v. Van Houten*, No. 01-09-00422-CV, 2011 WL 1233381, at *3 (Tex.App.—Houston [1st Dist.] Mar. 31, 2011, no pet.) (mem.op.).

We will not overturn a factfinder's determination unless only one inference can be drawn from the evidence and it opposes the factfinder's resolution of that issue. *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 461 (Tex.1992).

We review whether a trial court erred in admitting evidence under an abuse of discretion standard. *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 638 (Tex.2009).

**B. Statutory background**

█ A person can request a protective order under either the Family Code or the Code of Criminal Procedure.[3] The Family

---

**3.** Shoemaker also raises two issues that incorrectly assume that the protective order was entered under the Family Code. First, he argues that the evidence was insufficient to award a protective order in excess of two years under the Family Code. *See* TEX. FAM. CODE ANN. § 85.025(a–1) (West Supp.2015). The application was brought, and the protective order entered, under the Code of Criminal Procedure, which does not have a two-year limit, unlike the Family Code which imposes a two-year limit in certain situations. *Compare id. with* TEX. CODE CRIM. PROC. ANN. art. 7A.01 (West Supp.2015).

Second, Shoemaker argues that the trial court erred in "applying family and dating

violence standards to stalking and harassment." The application specifically says that it was brought under the Texas Code of Criminal Procedure, not the Family Code. The trial court did not rely on the Family Code and did not apply "family and dating violence standards"; the order states that it was issued under the Code of Criminal Procedure, which allows the trial court to issue a protective order if the applicant is a victim of stalking. *See* TEX. CODE CRIM. PROC. ANN. art. 7A.03(a). Even if the trial judge did verbally state an incorrect legal standard at the protective-order hearing, we must affirm the order if the trial court's order could be supported by any legal theo-

Code allows the trial court to issue a protective order "if the court finds that family violence has occurred and is likely to occur in the future." TEX. FAM. CODE ANN. § 81.001 (West 2014). Under the Family Code, a protective order is only available to members of the household or family of the alleged offender or a person in a dating relationship with the alleged offender. See id. § 82.002.

The Code of Criminal Procedure grants a trial court authority to issue a protective order "without regard to the relationship between the applicant and the alleged offender" if the applicant is a victim of certain crimes. TEX. CODE CRIM. PROC. ANN. art. 7A.01(a)(1). Effective September 1, 2011, the Legislature amended Chapter 7A of the Code of Criminal Procedure to allow a person who is a victim of stalking to receive a protective order under that Chapter. See TEX.CODE CRIM. PROC. Ann. art. 7A; Act of May 27, 2011, 82nd Leg. R.S., ch. 135, 2011 Tex. Gen. Laws 640, 640–41.

"Stalking" is a criminal offense under the Penal Code. TEX. PENAL CODE ANN. § 42.072 (West 2008). A person commits stalking if the person engages in conduct that:

(1) [he] knows or reasonably believes the other person will regard as threatening:

(a) bodily injury or death for the other person;

(b) bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or

(c) that an offense will be committed against the other person's property;

(2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or fear that an offense will be committed against the other person's property; and

(3) would cause a reasonable person to fear:

(a) bodily injury or death for himself or herself;

(b) bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship; or

(c) that an offense will be committed against the person's property.

TEX. PENAL CODE ANN. § 42.072 (West 2008).

Effective September 1, 2013, the Legislature amended the Penal Code's stalking statute to expand the actions that constitute stalking. Under the revised statute, a person can also violate the stalking statute through harassment:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) constitutes an offense under Section 42.07 ...;

(2) causes the other person ... to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to ...

ry. See Davis v. Huey, 571 S.W.2d 859, 862 (Tex.1978). Insofar as Shoemaker argues that insufficient evidence existed to support

the order under the correct legal standard, we address that argument under that issue.

(D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

TEX. PENAL CODE ANN. § 42.072 (West Supp.2015).

The reference to Section 42.07 is to the "harassment" statute. A person harasses another if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," he "sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id.* at § 42.07(a)(7) (West Supp.2015).

Thus, after 2013, a Code of Criminal Procedure protective order may be issued against a person who has, on more than one occasion, knowingly harassed another person, which caused that person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended, and would, likewise, have caused a reasonable person to have felt harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

Before issuing a permanent protective order, the trial court must hold a hearing to determine "whether there are reasonable grounds to believe that the applicant is the victim of ... stalking...." TEX. CODE CRIM. PROC. ANN. art. 7A.03(a) (West 2015).

### C. Evidence of actions before September 2011

Shoemaker argues that evidence of events before 2011 are inadmissible for two reasons. First, Article 38.46 does not apply to make otherwise inadmissible stalking evidence admissible. Second, to the extent his actions might qualify as stalking or harassment under the current version of the Penal Code, they did not qualify at the time he allegedly acted against Clarissa.

### 1. Admissibility under Article 38.46

■ Shoemaker argues that evidence that he violated the stalking statute before 2011 is irrelevant and inadmissible character evidence that is not made admissible by Section 38.46 of the Code of Criminal Procedure. That provision states: "In a prosecution for stalking, each party may offer testimony as to all relevant facts and circumstances that would aid the trier of fact in determining whether the actor's conduct would cause a reasonable person to experience a fear described by Section 42.072(a)(3)(A), (B), or (C), Penal Code...." TEX. CODE CRIM. PROC. ANN. art. 38.46 (West Supp.2015).

We agree with Shoemaker that his prior "bad acts" would not be admissible under Section 38.46 because that statute only applies to a "prosecution for stalking." *Id.* The trial court conducted a hearing on a protective order, not a prosecution for the offense of stalking. Thus, that provision is inapplicable and cannot serve as a basis for admitting the pre–2011 acts.

### 2. Admissibility under other rules

■ Shoemaker argues that pre–2011 acts are not admissible because those alleged acts did not qualify as stalking when they were committed and only became actionable under later amendments to the statute.[4]

Under the Rules of Evidence, relevant evidence is admissible unless another provision of the rules, another statute, or the United States or Texas Constitution pro-

---

4. Although the relevant changes in the statute took effect in 2013, Shoemaker argues to exclude only those actions that occurred before September 1, 2011. The Yelp review was posted in March 2013, but Shoemaker does not argue that the trial court erred by considering that evidence. We, therefore, will include that evidence in our review.

vides otherwise. *See* Tex. R. Evid. 402. Pre–2011 acts were not admissible to establish violations of the harassment statute as it was subsequently amended. However, the evidence was admissible for other limited purposes. The trial court did not abuse its discretion in considering Shoemaker's pre–2011 actions to determine whether—given the history between these individuals—Shoemaker's subsequent acts that could constitute violations caused Clarissa to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended or whether it would have caused a reasonable person to have those feelings. We cannot conclude that events between 2008 and 2011 were so remote that the trial court abused its discretion in finding this evidence admissible for this limited purpose.

■ Shoemaker argues that the evidence is nevertheless inadmissible under Rule 404. Shoemaker, however, did not raise this objection in the trial court, and thus, cannot raise it on appeal. *See* Tex. R. App. P. 33.1(a)(1)(A). Additionally, he waived the argument for failure to adequately brief the issue; Shoemaker does not give any analysis or authority to support his argument that the evidence violates Rule 404 except for the conclusory statement that "testimony was admitted from fellow employees at the school in clear violation of Texas Rules of Evidence 404." *See* Tex.R.App. P. 38. 1(i) (requiring brief to contain citations to legal authority in support of arguments); *Canton–Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex.App.—Houston [14th Dist.] 2008, no pet.) ("Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint.").

Having concluded that the pre–2011 events were admissible for a limited purpose, we turn next to whether there was legally and factually sufficient evidence for the trial court to issue the protective order.

### D. Legal and factual sufficiency

■ A trial court must grant a protective order if it determines that "there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking." Tex. Code Crim. Proc. Ann. art. 7A.03. A person is a victim of stalking if: (1) the offender has committed an offense under the harassment statute, e.g., sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm abuse, torment, embarrass or offend, with intent to harass, annoy, alarm abuse, torment, embarrass or offend; (2) the person feels harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and (3) a reasonable person would have those same feelings. Tex. Penal Code Ann. §§ 42.072, 42.07. We hold that under both a legal and factual sufficiency standard, sufficient evidence exists to support the trial court's finding that "reasonable grounds" exist to conclude that Clarissa was a victim of stalking.

Under the first element of the stalking statute—and limiting our analysis to the actions Shoemaker took after September 2011—there is evidence that Shoemaker sent two "electronic communications . . . in a manner reasonably likely to harass [or] annoy" Clarissa with then intent to do so.

The tenor of the Yelp review indicates that it was calculated to "harass," "annoy," "embarrass," and "offend" Clarissa. In a purported professional review of a school, Shoemaker publicly described Clarissa is terms unrelated to her professional competence or the quality of the school. He described Clarissa as a "high-maintenance woman" and "diva" who purportedly would "always have trouble finding a mate." In

his school review, Shoemaker accused Clarissa of trying to get him fired and finally succeeded. He also accused her of engaging in "extreme behavior." He asserted that she "concocted" the Cactus Café incident as "some sort of payback" to him.

The trial court had "reasonable grounds" to find that these insults and accusations were not an attempt to inform the community of the quality of an educational facility but, instead, to subject Clarissa to public ridicule in a manner that was intended to and was reasonably likely to harass, annoy, embarrass, abuse, and offend her and a reasonable, objective person.

The October 2014 email similarly provided "reasonable grounds" for the trial court to conclude that Shoemaker intended and the email was reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend Clarissa. Shoemaker sent this email to Clarissa over five years after their working relationship had ended. In it, he called Clarissa a "psychotic freak." The email indicates that he was continuing to monitor the number of "reads" of his earlier Yelp review as well as Clarissa's ongoing drama department production schedule. He expressed enjoyment in learning that she was not having a school production that season, attributing the failure to "karma." He also stated that he planned to continue his interest in her, threatening to "make it [his] mission to always spread the truth" about her. Thus, these two electronic communications satisfy the first element of the stalking statute.

Additionally, legally sufficient evidence exists to support the second and third elements of the stalking statute. The trial court could have concluded that these communications made Clarissa feel "harassed, annoyed, alarmed, abused, tormented, em-

barrassed, or offended" and would make a reasonable person feel the same.

Moreover, the history between Clarissa and Shoemaker—namely the repeated, earlier contact at the school, the interaction on the hike and bike trail, and the incident at Cactus Café—further support the trial court's conclusion that Clarissa and a reasonable person would feel "harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended" by Shoemaker's Yelp review and 2014 email. While Shoemaker testified that he did not harass Clarissa while he worked at the school with her, Clarissa and two co-workers contradicted his testimony. Similarly, the trial court could have disbelieved Shoemaker's testimony regarding the incident on the hike and bike trail and believed Clarissa and her friend's version of the events. In sum, we conclude that there is legally sufficient evidence to support the protective order.

Reviewing the same evidence under a factually sufficiency standard, we conclude that the trial court's order is not "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *See Ortiz*, 917 S.W.2d at 772.

Because legally and factually sufficient evidence exists to support the trial court's order, we overrule Shoemaker's first issue.

### Shoemaker Waived Constitutional Challenge to Stalking Statute

■ Shoemaker argues that the trial court's order was improper because it was "based almost entirely on [Clarissa's] 'feelings' of being annoyed or tormented." He "now challenges Tex. Penal Code Ann. § 42.072(a)(3)(D) to be in violation of the Due Process provisions of the United States and Texas Constitutions. It is impossible for ... any person[] to be cognizant of what another person is feeling."

The State argues that Shoemaker waived that issue.

■  Shoemaker is required to have presented his constitutional argument to the trial court to preserve it for appellate review. To preserve error, the party must make a "timely objection" that "states the specific ground for the objection, if the specific ground is not apparent from the context." *Miles v. State*, 312 S.W.3d 909, 911 (Tex.App.—Houston [1st Dist.] 2010, pet. ref'd); *see* Tex. R. App. P. 33.1(a)(1)(A).

Shoemaker did not present his argument that Subsection 3(D) violates his right to due process to the trial court. We cannot find, nor does Shoemaker point to, any place in the record in which he raises this constitutional objection. Because he failed to raise his constitutional challenge at the trial court, he waived the issue.[5]

### Conclusion

We affirm the trial court's order.

---

**5.** Additionally, Shoemaker waived this issue by failing to adequately brief it. His two sentence, conclusory argument—"As such Appellant now challenges Tex. Penal Code Ann. § 42.072(a)(3)(D) to be in violation of the Due Process provisions of the United States and Texas Constitutions. It is impossible for Appellant, or any person, to be cognizant of what another person is feeling to wit: 'harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended'"—contains no case law or other authority to support his argument. *See* Tex. R. App. P. 38.1(i) (requiring brief to contain citations to legal authority in support of arguments); *Canton–Carter*, 271 S.W.3d at 931 ("Failure to cite legal authority or to provide substantive analysis of the legal issues presented results in waiver of the complaint.").