

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| LEAH BELINDA LOPEZ, | § | No. 08-17-00252-CV |
|  | § |  |
| Appellant, | § | Appeal from |
|  | § |  |
| v. | § | 65th District Court |
|  | § |  |
| LILIA ISELA CRISANTO, | § | of El Paso County, Texas |
|  | § |  |
| Appellee. | § | (TC # 2017DCM1462) |
|  | § |  |

**O P I N I O N**

This is an appeal from an order granting a protective order in favor of Appellee Lilia Isela Crisanto and against Appellant Leah Belinda Lopez, based on a finding that Crisanto was the victim of stalking. Lopez contends that the trial court's finding was not supported by legally or factually sufficient evidence. For the reasons set forth below, we disagree, and we therefore affirm the trial court's order.

**PROCEDURAL AND FACTUAL BACKGROUND**

On March 3, 2017, Crisanto applied for a protective order pursuant to Article 7A.01 of the Texas Code of Criminal Procedure, alleging that Lopez had engaged in conduct that constituted stalking. The trial court held a hearing on Crisanto's application on October 23, 2017. Although Lopez was duly notified of the hearing, she did not personally appear at the hearing, but was

represented by counsel.[1]

At the hearing, Crisanto testified that prior to their divorce in April of 2017, Lopez and her then-husband, Jose Crisanto, began having an affair. According to Crisanto, she learned of the affair sometime in 2016 when Lopez sent her an e-mail to which Lopez attached photographs of Crisanto's husband and Lopez engaged in sexual intercourse, together with the following message: "[T]his is what I'm doing with your husband." Crisanto testified that Lopez thereafter sent her multiple e-mails and as many as 50 text messages, to which she attached additional photographs of Lopez and Crisanto's husband having anal and oral sex. At least eight of the photographs were introduced into evidence at the hearing, and Crisanto identified them as being photographs Lopez had sent her through electronic means. Lopez presented no evidence to rebut Crisanto's testimony that Lopez was the sender of the various communications in question.

Crisanto also recalled that when she went into her front yard one morning in March of 2017, she found four "inappropriate" photographs that Crisanto believed Lopez had left in the yard for her to find, which again depicted Lopez and Crisanto's husband engaged in various sexual acts. Crisanto testified that there was a message on the back of one of the photographs, which she believed Lopez had written, to the effect that the photographs were "evidence" that Crisanto's husband was "still f***ing" her. According to Crisanto, she responded only one time to Lopez's communications, asking her to stop. However, because Lopez failed to stop, Crisanto contacted the police on two or three occasions over the course of several months in 2016 and 2017, and filed at least one written police report in 2017 complaining about Lopez's conduct. Crisanto testified

---

[1] Prior to the hearing, Lopez filed a counterapplication seeking a protective order against Crisanto, but the trial court dismissed her counterapplication due to Lopez's failure to appear at the hearing. The dismissal of the counterapplication is not at issue in this appeal.

that Lopez's conduct caused her to feel "humiliated," "threatened," "insecure," and concerned for her safety. She further testified that because of the "horrendous" nature of Lopez's conduct, she found it necessary to seek psychiatric counseling.

At the close of the hearing, the trial court issued a protective order against Lopez pursuant to Chapter 7A of the Code of Criminal Procedure, expressly finding that there were "reasonable grounds to believe that [Crisanto] is the victim of stalking." The order, which expires on October 22, 2019, prohibits Lopez from communicating with Crisanto in a "threatening or harassing manner," from coming within 200 yards of her business or residence, and from engaging in conduct that is "reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass" Crisanto.

## DISCUSSION

Lopez argues in two related issues that the evidence presented at the hearing was both legally and factually insufficient to support the trial court's finding that Crisanto was the victim of stalking. In support of her argument, Lopez contends that Section 42.072 of the Texas Penal Code, which defines the offense of stalking, required Crisanto to present evidence that Lopez's conduct caused her to be in fear of bodily injury or death, or in fear that an offense would be committed against her property. Lopez contends that Crisanto presented no evidence from which the trial court could have found that she had any such fear. However, as explained below, under the current version of the Penal Code, Crisanto was not required to present evidence that she had any such fears in order to support the trial court's finding that she was the victim of stalking; instead the trial court was entitled to find that Crisanto was a stalking victim for purposes of issuing a Chapter 7A protective order based solely on evidence that Lopez engaged in the type of harassing conduct described by Crisanto at the hearing.

3

### The Current Version of the Stalking Statute

The Texas Code of Criminal Procedure gives a trial court the authority to issue a protective order "without regard to the relationship between the applicant and the alleged offender" if, after holding a hearing, the court determines "there are reasonable grounds" to believe the applicant is the victim of certain specified Penal Code offenses, including the offense of stalking. TEX.CODE CRIM.PROC.ANN. art. 7A.01(a)(1); 7A.03. In turn, stalking is defined in Section 42.072 of the Texas Penal Code. Prior to 2013, Section 42.072 of the Penal Code defined stalking as only including situations in which the perpetrator engaged in threatening conduct that placed the victim in fear of bodily injury or death, or in fear that an offense against the victim's property might take place. However, effective September of 2013, the Legislature amended the Code to expand the definition of stalking to also include situations in which the perpetrator engaged in conduct that constituted the offense of "harassment" under Section 42.07 of the Penal Code. [2] *See* Acts of

---

[2] In particular, Section 42.072 of the Penal Code, the stalking statute, was amended as follows, with the added language in bold:

> (a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:
> (1) **constitutes an offense under Section 42.07, or that** the actor knows or reasonably **should know** [believes] the other person will regard as threatening:
>   (A) bodily injury or death for the other person;
>   (B) bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or
>   (C) that an offense will be committed against the other person's property;
> (2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or **in** fear that an offense will be committed against the other person's property**, *or* to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended**; and
> (3) would cause a reasonable person to [fear]:
>   (A) **fear** bodily injury or death for himself or herself;
>   (B) **fear** bodily injury or death for a member of the person's family or household or for an individual with whom the person has a dating relationship;
>   (C) **fear** that an offense will be committed against the person's property; *or*
>   (D) **feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.**

4

May 24, 2013, 83rd Leg., ch. 1278 (H.B. 1606), § 2, TEX.GEN.LAWS 3231; *Shoemaker v. State*, 493 S.W.3d 710, 716–17 (Tex.App--Houston [1st Dist.] 2016, no pet.)(recognizing legislative changes to the stalking statute); *see also Seals v. Wilbourn,* ___S.W.3d ___, No. 12-17-00208-CV, 2018 WL 1180742, at *2 (Tex.App.--Tyler, Mar. 7, 2018, pet. denied)(affirming trial court's finding that a protective order applicant was the victim of stalking based solely on the respondent's harassing conduct). Thus, Section 42.072 of the Code now reads, in relevant part, that: "A person commits [the] offense [of stalking] if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that: (1) constitutes an offense under Section 42.07 . . . ; (2) causes the other person . . . to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and (3) would cause a reasonable person to . . . feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. TEX.PENAL CODE ANN. § 42.072.

In turn, Section 42.07 of the Code provides, in relevant part, that: "A person commits [the] offense [of harassment] if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person: (1) initiates communication and in the course of the communication makes a comment, request, suggestion, or proposal that is obscene . . . [and] (7) sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." TEX.PENAL CODE ANN. § 42.07(a)(1)(7). The term "obscene" is defined in the harassment statute as a communication "containing a patently offensive description of or a solicitation to commit an ultimate sex act, including sexual intercourse, masturbation, cunnilingus, fellatio, or anilingus . . . ." TEX.PENAL CODE ANN. § 42.07(b)(3). The term "electronic

---

Acts of May 24, 2013, 83rd Leg., ch. 1278 (H.B. 1606), § 2, TEX.GEN.LAWS 3231 (current version at TEX.PENAL CODE ANN. § 42.072

communication" is defined in the statute as including, among other things, communications sent via electronic mail and text messages. TEX.PENAL CODE ANN. § 42.07(b)(1)(A).

In the present case, Lopez's conduct took place in 2016 and 2017, well after the effective date of the amendments to the Penal Code, which expanded the definition of stalking to include the above-described types of harassing conduct. Accordingly, we will review Lopez's argument that there was insufficient evidence to support the trial court's finding that Crisanto was the victim of stalking, for purposes of issuing a Chapter 7A protective order, with this expanded definition of stalking in mind.

### *Standard of Review*

We review a trial court's decision to grant or deny a Chapter 7A protective order for both legal and factual sufficiency of the evidence. *See State for Prot. of P.B. v. V.T.*, 575 S.W.3d 921, 924 (Tex.App--Austin 2019, no pet.); *Webb v. Schlagal*, 530 S.W.3d 793, 802 (Tex.App--Eastland 2017, pet. denied); *Shoemaker,* 493 S.W.3d at 714-15; *see generally In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000)("When the trial court acts primarily as a factfinder, appellate courts normally review its determinations under the legal and factual sufficiency standards.").

In resolving a legal sufficiency challenge, we consider whether the record evidence would have enabled "a reasonable and fair-minded fact finder" to render the decision under review. *See Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018), *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). In making this determination, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable fact finder could not. *See Bos v. Smith*, 556 S.W.3d 293, 300 (Tex. 2018); *see also City of Keller,* 168 S.W.3d at 827; *Shoemaker*, 493 S.W.3d

6

at 715. Where there is more than a mere scintilla of evidence to support the issuance of a protective order, we will find the evidence legally sufficient to uphold the order. *See, e.g.*, *Seals,* ___S.W.3d at ___, 2018 WL 1180742, at \*1; *Webb,* 530 S.W.3d at 802; *Shoemaker*, 493 S.W.3d at 715.

In resolving a factual sufficiency challenge, we consider the entire record, and we will set aside a trial court's finding only if it is "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). When conducting a factual sufficiency review, a court must not substitute its judgment for that of the fact finder, who "is the sole judge of the credibility of witnesses and the weight to be given to their testimony." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *see also Webb,* 530 S.W.3d at 802, *citing Turner v. KTRK Television, Inc*., 38 S.W.3d 103, 134 (Tex. 2000). The fact finder is permitted to resolve inconsistencies in the testimony of any witness, may draw inferences from the evidence presented, and may choose between conflicting inferences. *Shoemaker*, 493 S.W.3d at 715, *citing McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986). An appellate court will not overturn a fact finder's determination unless only one inference can be drawn from the evidence and it opposes the fact finder's resolution of that issue. *Id*., *citing Havner v. E-Z Mart Stores, Inc.,* 825 S.W.2d 456, 461 (Tex. 1992); *see also Seals,* ___ S.W.3d at ____, 2018 WL 1180742, at \*1.

### *Analysis*

As explained above, under the current version of the Penal Code, the trial court was entitled to find that Crisanto was the victim of stalking if it determined that: (1) Lopez, on more than one occasion and pursuant to the same scheme or course of conduct directed specifically at Crisanto,

knowingly engaged in conduct that constituted the offense of "harassment" as defined above; (2) Crisanto subjectively felt harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended by Lopez's conduct; and (3) a reasonable person would have had those same feelings. *See Shoemaker,* 493 S.W.3d at 718, *citing* TEX.PENAL CODE ANN. § 42.072. Based on our review of the record, we conclude that there was both legally and factually sufficient evidence to support a finding that all three of the elements of the stalking statute were met.

First, we conclude that there was legally sufficient evidence to support a finding that Lopez knowingly engaged in conduct that constituted the offense of harassment, and that she engaged in such conduct on more than one occasion, as part of a common scheme or course of conduct directed at Crisanto. As explained above, under the two relevant provisions in the Penal Code, a person may commit the offense of harassment by either initiating "obscene" communications, i.e., communications describing an "ultimate sex act" in a patently offensive manner, or by sending repeated electronic communications in a "manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." TEX.PENAL CODE ANN. § 42.07(a)(1)(7). The evidence presented at the hearing was legally sufficient to support a finding that Lopez engaged in conduct that constituted the offense of harassment under both of these provisions.

As set forth above, Crisanto testified at the hearing, without contradiction, that Lopez initiated communications with her, told Crisanto on at least two occasions that she was engaging in sexual activity with Crisanto's husband, and repeatedly sent Crisanto graphic photographs depicting the two of them engaged in various sexual acts. These communications were not only patently offensive and therefore "obscene" in light of their graphic and descriptive sexual nature, but Lopez sent the communications primarily through electronic means in a manner that was

8

reasonably likely to harass, annoy or embarrass Crisanto given their inappropriate and obviously upsetting subject matter. Further, given the repeated nature of Lopez's communications, which took place over the course of several months, the trial court could have reasonably determined that Lopez knowingly sent the communications as part of a common scheme or course of conduct directed at Crisanto to torment or annoy her with proof of her affair with Crisanto's husband.

Second, we conclude that there was legally sufficient evidence to support a finding that Crisanto subjectively felt "harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended" by Lopez's conduct. Crisanto expressly testified at the hearing that the communications she received from Lopez caused her to feel "humiliated," and even necessitated the need for her to seek psychiatric counseling. And third, we conclude that Crisanto's testimony was legally sufficient to support a finding that a reasonable person in Crisanto's situation, i.e., a person who was being inundated with graphic photographs of her then-husband engaged in various sexual acts with another woman, would have had those same feelings.

Accordingly, in reviewing the record under a legal-sufficiency standard, we conclude that there was more than a scintilla of evidence presented at the hearing to support the trial court's finding that Crisanto was the victim of Lopez's stalking under the current version of the Code, and that Crisanto was therefore entitled to a Chapter 7A protective order on that basis. Similarly, in reviewing this same uncontradicted evidence under a factual-sufficiency standard, we conclude that the trial court's finding that Crisanto was the victim of stalking was not "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust."

Lopez's Issues One and Two are overruled.

## CONCLUSION

The trial court's order is affirmed.

August 28, 2019

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

10