

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-20-00096-CV

_____

ANDREW MCDANIEL, APPELLANT

V.

STEPHANIE JOHNSON, APPELLEE

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 19-11-26065; Honorable Pat Phelan, Presiding

December 31, 2020

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

## MEMORANDUM OPINION

Appellant, Andrew McDaniel, challenges a protective order entered in favor of Appellee, Stephanie Johnson, under Chapter 7A of the Texas Code of Criminal Procedure.[1]  By a single issue, stated in two subparts, he argues the trial court erred in

_____

[1] The clerk's record shows that the application for a family protective order stated it was sought pursuant to section 71 of the Texas Family Code.  At the close of the hearing regarding the protective order, the trial court found the "pleadings were amended by implication and that the—I finds [sic] that stalking has

granting a protective order against him because Johnson failed to present sufficient evidence to prove the protective order was warranted. Specifically, he contends: (1) his conduct did not constitute stalking by harassment under section 42.07 of the Penal Code and (2) his conduct would not cause a reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. We affirm.

### BACKGROUND

McDaniel and Johnson were married from May 2009 until September 2013. The two have one daughter, aged seven at the time the protective order was issued. In 2011, McDaniel was convicted of possession of child pornography and sentenced to serve seven years of imprisonment in a federal facility. Johnson filed for divorce while McDaniel was incarcerated.[2] Johnson received a number of calls from McDaniel while he was imprisoned. During those calls, he threatened to make her life miserable and to take her daughter away from her so that she would never see her again. Johnson was eventually able to have her phone number blocked by prison authorities. Thereafter, McDaniel used calling cards belonging to other inmates to contact Johnson.[3] Johnson also received phone calls and letters from other inmates that appeared to be at the behest of McDaniel

---

occurred and is likely to occur in the future . . . ." While some of this language reflects the findings necessary under the Family Code, rather than that required under the Code of Criminal Procedure, McDaniel's appellate brief cites Chapter 7A of the Texas Code of Criminal Procedure and does not reference the Family Code. We will, therefore, analyze McDaniel's appellate issue under Chapter 7A of the Code of Criminal Procedure. We do note, however, that the order more closely tracks that of the Family Code and should have been analyzed under the requisite provision of the Family Code. That being said, we further find the evidence would also be sufficient to support the trial court's issuance of the protective order under this analysis.

[2] The divorce decree names McDaniel as a possessory conservator of the child with certain rights and duties.

[3] McDaniel testified he used the calling cards of other inmates because Johnson wanted him to call her more frequently than his calling cards permitted.

as two of those letters implored her to remain married to McDaniel. Johnson believed, despite McDaniel's assertions to the contrary, that McDaniel provided her contact information to the other inmates.[4] While incarcerated, McDaniel also filed suit against Johnson seeking to remove their daughter from her care, arguing Johnson was mentally unfit.

McDaniel was released from prison in 2018 and discharged to a halfway house in Lubbock, Texas. McDaniel placed a call via payphone to Johnson before he arrived at the halfway house. At some point, McDaniel violated the terms and conditions of his release by gaining access to the Internet and was sent to Lubbock County Jail as a result.[5]

In November 2019, Johnson, through the Hockley/Cochran County Attorney's Office, filed an application for a protective order against McDaniel.[6] Johnson sought the order in response to her history with McDaniel, his continuous attempts to call her at work

---

[4] McDaniel testified at the hearing regarding the protective order that his belongings had been stolen and the inmates had obtained Johnson's contact information that way.

[5] Johnson testified she believed McDaniel used FaceBook to locate her contact information. McDaniel admitted to using FaceBook to see photographs of his daughter. He also admitted such use was in violation of the rules of the halfway house. He also said his mother and father used the Internet to help him locate information.

[6] Article 7A.03 of the Texas Code of Criminal Procedure allows a trial court to issue a protective order in favor of a person that the trial court has "reasonable grounds" to believe is a victim of a stalking statute, section 42.072 of the Penal Code. That article provides as follows:

> (a) At the close of a hearing on an application for a protective order under this chapter, the court shall find whether there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, indecent assault, stalking, or trafficking.
>
> (b) If the court makes a finding described by Subsection (a), the court shall issue a protective order that includes a statement of the required findings.
>
> (c) An offender's conviction of or placement on deferred adjudication community supervision for an offense listed in Article 7A.01(a)(1) or (2) constitutes reasonable grounds under Subsection (a).

TEX. CODE CRIM. PROC. ANN. art. 7A.03 (West 2019).

3

and at various cell phone numbers, as well as his contacting her at her work address, all despite her insistence that he not contact her. A temporary protective order was issued, and a hearing regarding the protective order was held in December 2019.

At the hearing, Johnson testified to two instances of domestic violence during her marriage. One involved McDaniel throwing a plastic container of yarn at her and another involved his "tackling" her and injuring her back. Johnson also testified he attempted to control her during their marriage and when they argued, "he would back [her] into corners and—where I couldn't get out and I would have to like fight my way out." McDaniel disputed each of those instances. Johnson also told the court of letters she received from inmates while McDaniel was incarcerated and testified to her belief that those letters were written at McDaniel's behest. Further, she said, he often called her from prison. She testified he called her "a lot." She said she "had a phone number" and then "changed my phone number because he had been calling me so much and I thought that that would be enough just changing my phone number and then he got my new phone number and he only called me the one time on that new phone number."

Johnson told the court that on one occasion, she had changed her phone number, but McDaniel nevertheless called at "10 o'clock at night demanding to talk to . . . my 18-month-old daughter." She testified that ten days after McDaniel was released to the halfway house, he called her at work. She requested that he not do so. She told him if he did not leave her alone, she would call the police. He told her to "go ahead" and "so [she] did." Ten days after that, Johnson said, he called her on her cell phone. She again asked him not to call her. That same day, he sent her a text message and called her mother. Ten days after that, he called Johnson again. She did not answer that phone

4

call.  She also said he sent a Mother's Day card to her at work in 2018.  In that card, he "talked about how much he loved [their daughter] and how he was going to love her in all the ways possible and how nothing was going to come between them and they were going to be together forever."  She said she was concerned because the language of the card left "a lot of room for interpretation" and "given his crime, it makes [her] very nervous."

Johnson also described an instance in which she was traveling with co-workers. During the drive, she received a phone call from a number she did not recognize.  She answered and then recognized the voice as belonging to McDaniel so she hung up. He "called just time after time after time, before I could even do anything, I couldn't—I couldn't block him because he was calling so incessantly."  This led Johnson to suffer a panic attack.  She answered affirmatively when the State's attorney asked whether she was terrified of McDaniel.  Johnson elaborated, saying "I—I believe that at some point he is going to attempt to hurt me.  I—I believe that 100 percent that it is going to come down to me having to watch either him try to kill me or kill my family to get back at me."

Johnson said the last time McDaniel contacted her was on July 25, 2019.  She said that on that day, he called her "six times in four hours and also [her] fax machine kept going off, just off, off, off, off, off."  She agreed that he calls her at work, finds her home, locates her work addresses and just "continues to find" her, despite the fact that her contact information was redacted from her divorce decree.  She said that while he had sought modification of custody of their daughter, the court had denied his requests

and no legal proceeding was pending.[7] As such, she testified, she had no motivation to seek a protective order to keep McDaniel from her daughter and he had no reason to be contacting her. She agreed she simply wanted him to stop stalking her, to stop locating her information, and to stop tracking her down. She wanted him to leave her alone because she was afraid of him.

An investigator with the Hockley County Sherriff's Office testified she submitted the report for the protective order. She said that after speaking with Johnson and "going through her phone records and listening to voice mails [from McDaniel] and talking to her, I've—I've been doing this for quite some time, and her behavior combined with her testimony led me to believe she truly felt threatened and that Mr. McDaniel could very well pose a threat to her and her family." She deemed the conduct of McDaniel to be stalking and asked for a protective order on that basis. She said she based her assessment of stalking on "[o]ngoing harassment or what I feel is harassing communication throughout the years based on Mrs. Johnson's testimony combined with phone records . . . cards, court documents . . . ." The investigator further testified McDaniel called Johnson on September 29, 2018, sent three text messages on March 1, 2019, one text message on April 18, 2019, one text message on April 21, 2019, one text message on April 29, 2019, one text message on May 2, 2019, two text messages on May 6, 2019, one text message on May 22, 2019, one text message on June 1, 2019, and one text message on June 16, 2019. No messages were sent in response, indicating

---

[7] McDaniel's parental rights to his daughter were terminated in May 2015. The trial court's decision was reversed by this court in January 2016 after we determined Johnson failed to prove by clear and convincing evidence that terminating McDaniel's parental rights was in the child's best interests. *In re A.G.D.*, No. 07-15-00201-CV, 2016 Tex. App. LEXIS 688, at *30 (Tex. App.—Amarillo Jan. 22, 2016, no pet.) (mem. op). Nevertheless, the record indicates McDaniel currently has not been granted visitation rights to his daughter.

there was no ongoing conversation between Johnson and McDaniel that would warrant the continued attempts at contact.

McDaniel testified at the hearing, denying any stalking or harassing conduct, arguing he was only seeking access to his daughter.[8]  He argued the divorce decree required that Johnson keep him apprised of significant events and the health of his daughter and he was entitled to seek that information.  He focused on Johnson's refusal to adhere to the divorce decree, arguing it left him with no choice but to continue to attempt to contact her.  He also focused on the lack of a direct threat to Johnson and elicited testimony from her that she "felt threatened."[9]

After the evidentiary hearing, the trial court granted the protective order, making it effective for two years.  Thereafter, the trial court entered Findings of Fact and Conclusions of Law, concluding probable cause existed that McDaniel committed an offense under section 42.072 of the Texas Penal Code (Stalking), that he engaged in stalking by harassment, that a reasonable person would feel harassed, annoyed, alarmed, abused, tormented, or offended by McDaniel's conduct, and that a protective order was necessary for the safety and welfare and in the best interests of Johnson and

---

[8] McDaniel did not have counsel at the hearing regarding the protective order.  Rather, he chose to represent himself.  McDaniel is, however, represented by counsel on appeal.

[9] We note that the stalking statute does not require that actual threats be made; instead, it merely requires conduct that "the other person would regard as threatening."  *Russo v. Bernal*, No. 03-17-00551-CV, 2019 Tex. App. LEXIS 951, at *15 (Tex. App.—Austin, Feb. 12, 2019, no pet.) (mem. op.).

other members of her family and necessary to prevent conduct prohibited by the harassment statute.[10]

### ANALYSIS

### STANDARD OF REVIEW

In matters in which the trial court is a fact finder, such as when it is making findings to determine whether to issue a protective order, we review the evidence supporting the protective order under both legal and factual sufficiency standards. *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000); *Vongontard v. Tippit*, 137 S.W.3d 109, 112 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A trial court's findings of fact have the same force and effect as a jury's verdict. *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Consequently, sufficiency challenges to a trial court's findings of fact are reviewed under the same standards used to review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994).

Under a legal sufficiency standard, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable fact finder could not disregard that evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *City of Houston v. Hildebrandt*, 265 S.W.3d 22, 27 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "If there is any evidence of probative force to support the finding, i.e., more than a mere scintilla, we will overrule the issue." *Hildebrandt*, 265 S.W.3d at 27.

---

[10] The *Conclusions of Law* entered by the trial court referenced section 42.071. That section has been repealed. From the context of the order, it is clear the trial court was referring to section 42.072, the stalking provision.

Under a factual sufficiency standard, we examine all of the record evidence and set aside the trial court's order only if it is "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996). The fact finder is the exclusive judge of which facts have been proven, which witness is credible, and the weight to be given any witness's testimony. *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 134 (Tex. 2000).

When conflicting evidence exists, the fact finder is entitled to believe one witness and disbelieve others. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986); *CCC Grp., Inc. v. S. Cent. Cement, Ltd.*, 450 S.W.3d 191, 196 (Tex. App.— Houston [1st Dist.] 2014, no pet.). The fact finder is permitted to resolve inconsistencies in the testimony of any witness. *McGalliard*, 722 S.W.2d at 697. It may also draw inferences from the facts and choose between conflicting inferences. *Ramo, Inc. v. English*, 500 S.W.2d 461, 467 (Tex. 1973); *Lopez v. Crisanto,* 583 S.W.3d 926, 930 (Tex. App.—El Paso 2019, no pet.) (citations omitted). We will not overturn a fact finder's determination unless only one inference can be drawn from the evidence and it opposes the fact finder's resolution of that issue. *Havner v. E-Z Mart Stores, Inc.*, 825 S.W.2d 456, 461 (Tex. 1992).

### APPLICABLE LAW—PROTECTIVE ORDERS

A person may request a protective order under either the Family Code or the Code of Criminal Procedure. *Shoemaker v. State*, 493 S.W.3d 710, 716 (Tex. App.—Houston [1st Dist.] 2016, no pet.). The Family Code permits the trial court to issue a protective order "if the court finds that family violence has occurred and is likely to occur in the future." TEX. FAM. CODE ANN. § 81.001 (West 2014). Under the Family Code, a protective

9

order is only available to members of the household or family of the alleged offender or a person in a dating relationship with the alleged offender.  *Id.* at § 82.002.

The Code of Criminal Procedure grants a trial court authority to issue a protective order "without regard to the relationship between the applicant and the alleged offender" if the applicant is a victim of certain crimes.  *Shoemaker*, 493 S.W.3d at 716  (citing TEX. CODE CRIM. PROC. ANN. art.  7A.01(a)(1)).  In 2011, the Legislature amended Chapter 7A of the Code of Criminal Procedure to allow a person who is a victim of stalking to receive a protective order under that Chapter.  *Shoemaker,* 493 S.W.3d at 716 (citing TEX. CODE CRIM. PROC. ANN. art. 7A; Act of May 27, 2011, 82nd Leg. R.S., ch. 135, 2011 Tex. Gen. Laws 640, 640-41).

"Stalking" is a criminal offense under the Penal Code.  *See* TEX. PENAL CODE ANN. § 42.072 (West 2019).  In 2013, the Legislature amended the Penal Code's stalking statute to expand the actions that constitute stalking.  *Shoemaker*, 493 S.W.3d at 716. Under the revised statute, a person can violate the stalking statute through harassment. That provision provides as follows:

(a) A person commits an offense if the person, on more than one occasion and pursuant to the same scheme or course of conduct that is directed specifically at another person, knowingly engages in conduct that:

(1) constitutes an offense under Section 42.07 [the harassment statute] or that the actor knows or reasonably should know the other person will regard as threatening:

(A) bodily injury or death for the other person;

(B) bodily injury or death for a member of the other person's family or household or for an individual with whom the other person has a dating relationship; or

10

(C) that an offense will be committed against the other person's property;

(2) causes the other person, a member of the other person's family or household, or an individual with whom the other person has a dating relationship to be placed in fear of bodily injury or death or in fear that an offense will be committed against the other person's property, or to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended; and

(3) would cause a reasonable person to . . .

(D) feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

TEX. PENAL CODE ANN. § 42.072 (West 2019).

A person harasses another if, "with intent to harass, annoy, alarm, abuse, torment, or embarrass another," he "causes the telephone of another to ring repeatedly . . . or in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another" or "sends repeated electronic communications in a manner reasonably likely to harass, annoy, alarm, abuse, torment, embarrass, or offend another." *Id.* at § 42.07(a)(4), (7) (West 2019). *See also Lopez*, 583 S.W.3d at 928-29 (recognizing and discussing amendments to stalking statute).

Accordingly, a protective order may be issued under the Code of Criminal Procedure against a person who has, on more than one occasion, knowingly harassed another person, which caused that person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended, and would, likewise, have caused a reasonable person to have felt harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended. *Shoemaker*, 493 S.W.3d at 717. Before issuing a permanent protective order, the trial court must hold a hearing to determine "whether there are reasonable grounds to

believe that the applicant is the victim of . . . stalking . . . ." *Id.* (citing TEX. CODE CRIM. PROC. ANN. art. 7A.03(a)).

We find that, under the requisite standards, the record shows sufficient evidence exists to support the trial court's finding that Johnson is the victim of stalking by McDaniel. Consequently, we find no error in the trial court's issuance of the protective order.

Johnson testified to the history between herself and McDaniel. She told the court of their marriage, his conviction, and his conduct from prison. Both Johnson and the investigator testified to repeated phone calls and text messages from McDaniel to Johnson. Both also testified McDaniel continued to physically locate her even when her contact information was kept private. She testified to her fear for herself and her family from McDaniel, to the panic attack she had as the result of his incessant calling, and to her desire that he just leave her alone. This is evidence that supports a finding that McDaniel engaged in conduct sufficient to satisfy the requisites of section 42.07 of the Penal Code. TEX. PENAL CODE ANN. § 42.07; *Lopez*, 583 S.W.3d at 931.

McDaniel contends that no reasonable person would feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended by his conduct. Even if we do not consider Johnson's testimony, the investigator's testimony contradicts McDaniel's assertion. The investigator testified she had been investigating situations like this for "quite some time" and she believed, based on her assessment of her discussion with Johnson, as well as her review of voice mail recordings and documents, that McDaniel was engaging in stalking behavior. There is no indication that the investigator was not a reasonable person and yet, she came to the same conclusion that McDaniel's behavior was indeed harassing, annoying, alarming, abusive, tormenting, embarrassing or

offensive. Thus, we find the record supports the trial court's finding that McDaniel's conduct would cause a reasonable person to feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended.

While McDaniel's testimony denied any harassing or stalking behavior, he did admit to locating and contacting Johnson regularly. He attempted to excuse this behavior by eliciting testimony that she had a duty under the divorce decree to keep him apprised of his daughter's well-being and he was simply contacting Johnson for the information to which he was entitled. At the hearing and on appeal, McDaniel points to the language of this court's opinion reversing the termination of his parental rights as support for his attempts at contact. However, even assuming McDaniel was entitled to that information, as it appears he was, he was not entitled to obtain that information through stalking or harassment. And, even if we assume the authenticity of the underlying reason for his contact of Johnson, it still does not negate the evidence supporting the trial court's finding McDaniel stalked Johnson. Further, the trial court as fact finder could have believed the testimony of Johnson and the investigator and disbelieved that of McDaniel. *McGalliard*, 722 S.W.2d at 697; *CCC Grp., Inc.*, 450 S.W.3d at 196. *See also Webb v. Schlagal*, 530 S.W.3d 793, 805 (Tex. App.—Eastland 2017, pet. denied). We thus find there is legally sufficient evidence to support the issuance of the protective order.

Reviewing the same evidence under a factual sufficiency standard, we conclude the trial court's order is not "so against the great weight and preponderance of the evidence as to be clearly wrong and unjust." *Shoemaker*, 493 S.W.3d at 719 (citation omitted). Therefore, finding both legal and factual sufficiency exists to support the trial court's order, we overrule McDaniel's issue.

13

**CONCLUSION**

Having resolved McDaniel's issue against him, we affirm the trial court's order.


Patrick A. Pirtle
Justice
